OF THE

# STATE OF NEVADA

## APRIL TERM, 1905

[No. 1666.]

MRS. C. I. CANDLER AND WILLIAM CANDLER, HER HUSBAND, RESPONDENTS, *v.* THE WASHOE LAKE RESERVOIR AND GALENA CREEK DITCH COMPANY, A CORPORATION, APPELLANT.

CROPS—DESTRUCTION—DAMAGES—IRRIGATION—CONSTRUCTION OF CONTRACTS—APPEAL—TIME OF TAKING—ASSIGNMENTS OF ERROR.

1. An appeal from a judgment, when not taken within one year from the time of the rendition of the judgment, as required by Comp. Laws, 3425, will be dismissed.

2. Where the assignments of error do not include any general assignment, in accordance with Comp. Laws, 3292, that the decision or judgment is not supported by the evidence, or is contrary to the evidence, but specify a number of particulars in which it is alleged that the evidence is insufficient to sustain the findings and decision of the court, the supreme court's consideration of the evidence will be limited to such portions thereof as refer to the particulars specified as insufficient.

3. A provision of a contract to supply water for irrigation, requiring defendant to deliver to plaintiffs 50 inches of water "on Section 14, near the line of Section 23, at a point to be designated on the line" of a certain ditch, merely fixes the place of delivery, and does not preclude plaintiffs from recovering damages for the loss of crops on Section 23 in case of defendant's failure to deliver the water as required.

4. Errors not presented in the briefs of appellant's counsel nor in the oral argument will not be considered.

5. The measure of damages for the total destruction, or nearly total destruction, of growing crops which would to a reasonable certainty have matured except for defendant's wrongful act, is the value of the probable yield of the crops under proper cultivation when matured and ready for market, less the estimated expense of producing, harvesting, and marketing them, including the expense of irrigation, and the value of any portion of the crops that may have been saved.

6. Wheat seed is a necessary expense of producing a crop of wheat, and the value thereof is not an element of damage for the destruction of the crop while growing.

7. The value of timothy and alfalfa seed, planted, not to produce a single crop, but to obtain a stand which will produce crops for many years without further seeding, is an element of damage for the wrongful destruction of the crops, including the seed, while growing.

APPEAL from the District Court, Washoe County; *M. A. Murphy*, Judge.

Action by Mrs. C. I. Candler and another against the Washoe Lake Reservoir and Galena Creek Ditch Company. From a judgment for plaintiffs and from an order denying a new trial, defendant appeals. **Appeal from judgment dismissed, and appeal from order affirmed on condition.**

The facts sufficiently appear in the opinion.

*Mack & Farrington*, for Appellant:

I. In this case plaintiffs brought suit on an alleged breach of contract whereby plaintiffs alleged that defendant agreed to furnish 50 inches of water upon Section 14, Township 18 north, Range 20 east, during the irrigation season, according to a written contract set forth and made part of the complaint. Plaintiffs further alleged in their complaint that defendant failed to furnish water according to contract and they had been damaged thereby, among other things, by loss of crop, seed, and labor to produce the same. Defendant answered by alleging that it had furnished the 50 inches of water according to contract up to the 8th day of August, 1902, and a smaller amount thereafter for the reason that sufficient water was not obtainable from said creek after said 8th day of August, and also denied that plaintiffs had been damaged in any sum whatever; and further alleged that by the terms of said contract plaintiffs had agreed to pay defendant $2.50 per acre for the first crop and $2.50 for the

second crop. The court found that defendant had agreed to furnish 50 inches of water upon Section 14 during the irrigating season, when obtainable. The court found that defendant furnished 50 inches of water according to the terms of the contract from the 10th day of May to the 8th day of August, 1902. The court found that "plaintiffs relying upon the agreement of the defendant cleared and seeded to alfalfa, timothy, and wheat 29 acres of land and seeded to timothy and alfalfa 5 acres in addition thereto, for the purposes of pasturage, in Sections 14 and 23, expecting to irrigate and cultivate the crops so sown with the waters agreed to be furnished," etc.

II. There is a conflict between findings 3 and 5 in this, that in finding 3 the court found that the defendant had agreed in writing to furnish 50 inches of water on the land in Section 14, but nowhere found that defendant had ever agreed to furnish any water upon Section 23, while in paragraph 5 the court found that defendant had cleared and sown the land in Sections 14 and 23. The court further found in said finding 5 that the loss sustained was for loss of crops, etc., on Section 23, and this part of said finding 5 is in conflict with finding 3, and it is not sustained by any evidence in the case. It is in direct opposition to all the evidence introduced on the trial.

III. The court erred in giving plaintiffs damages for loss of crops raised or attempted to be raised on Section 23, as under the findings and evidence the defendant cannot be held or mulcted in damages for any loss for crops raised or attempted to be raised on the lands in Section 23. The court found that the defendant fulfilled its contract up to the 8th day of August, 1902, and furnished some water after that date, but insufficient in quantity to irrigate all of the crops in Sections 14 and 23. We contend that in the absence of a showing to the contrary, in the face of the finding of the court that defendant furnished some water after the 8th day of August, 1902, the law presumes the defendant furnished water sufficient to irrigate the crops on Section 14 after the said 8th day of August, 1902, and, further than that, the burden of proof fell on plaintiffs to show by a preponder-

ance of the evidence that defendant failed to supply sufficient water to irrigate the crops on Section 14 after the said 8th day of August, 1902, and under the evidence the court erred in not finding there was sufficient water furnished by defendant to irrigate the crops in Section 14.

IV.   The court found that plaintiffs had been damaged by the loss of the wheat crop so sown on Sections 14 and 23 to the amount of $362.25; by loss of fall pasture, 34 acres, to the amount of $120.60; to the amount expended for wheat and alfalfa seed used in seeding said land, $96.88; and to the amount of $150 expended for labor, etc.   The court, on motion for new trial, struck out the item of $150 as being an error.   The court erred in finding that defendant should pay for the seed put into the ground to raise the crop after assessing the crop as damage against defendant.   Until the trial of this case, whoever heard of a case where the judge gave the crop to plaintiffs as a damage, then on top of that gave plaintiffs the costs of the seed sown to produce the crop?   We claim that this error is so apparent that the bare statement is sufficient to disclose the error.   This finding of the court further shows that a part of the seed ($96.88) was sown upon Section 23 with which defendant had no concern, and we claim is such an error as is fatal to the judgment. This finding further shows that the item, $102.60 damages, assessed against defendant for loss of fall pasturage, was for loss of pasturage on Section 23, which is in direct conflict with finding 3, and the verdict in the case is wholly unsustained by any evidence.   The contract and the entire evidence shows conclusively that defendant never agreed to supply water on Section 23 under any circumstances.   Further, the assessing of the seed as a damage against the defendant was the same kind of an error as that committed by the court in allowing the irrigator's wages against the defendant, and should have been stricken out or a new trial granted.

V.   The court found that defendant furnished plaintiffs with water according to contract to August 8, 1902.   The evidence of James Burke shows without any contradiction that the first crop was ready to cut July 1st.   Under said

finding and on said evidence defendant was entitled according to said contract to the sum of $2.50 per acre for water for irrigating the first crop, and it was error on the part of the court to refuse defendant this sum of $95 as an offset to the amount of damages allowed to plaintiffs, the court having given the plaintiffs damages as follows, to wit: Value of timothy seed, $15.38; value of alfalfa seed, $52.50; value of wheat seed, $29; loss of pasturage of 34 acres of land at $3 per acre, $102; 29 acres of wheat, 900 pounds to the acre, at $1\frac{1}{4}$ cents per pound, $362.25; the wages of an irrigator from May 7, 1902, until the 7th day of August, 1902, at $150 per month, $675.13. This was the value of the seed, crop, and labor of raising the crop just as though the crop had been raised and fully matured. Under any fair ruling the defendant was entitled to $190 for irrigating the land so long as he was held liable under the contract for the seed, crop, and labor in raising the same.

VI.. The court erred in giving plaintiffs damage for loss of wheat crop, for the reason the contract in evidence shows that defendant agreed to furnish water for two crops, the first being ready to cut about July 1st, and the second during September, and the fact that plaintiffs planted a crop that would not mature within those dates should not be assessed against defendant under the terms of said contract. The court erred in making no allowance for the hay and wheat which plaintiffs cut and used from said lands which were raised by the water supplied by defendant. The court erred in giving defendant the gross value of the crop value without deducting the expenses of raising, cutting, harvesting, and marketing the same.

*Cheney, Massey & Smith*, for Respondents:

I.   The respondents' motion heretofore filed herein to dismiss the appeal from the judgment should be sustained. The mere suggestion of the facts is sufficient to justify this action of the court. The judgment was entered on the 7th day of July; the notice of appeal was served on the 19th day of September, 1904, more than a year after the judgment was entered. An appeal is made by filing with the clerk of the

court with whom the judgment is entered a notice, and serving a copy thereof upon the adverse party or his attorney. (Comp. Laws, 3426.) The appeal not having been taken from the final judgment within one year after the rendition thereof, the motion to dismiss must be sustained. (Comp. Laws, 3425; *Sullivan* v. *Fuller*, 13 Nev. 276.)

II. The appellant's brief herein is so incomplete and unsatisfactory as not to arise to the dignity of an assignment of errors under the laws of this state. With one or two exceptions, the matters suggested as a reason for the reversal of the order denying the motion for a new trial have not even been included in the specifications of error. Most of the suggestions offered in the appellant's brief were not even made by the pleadings. By an objection to the evidence or by assignment of errors, and, with the appeal from the judgment dismissed, could not, under our civil practice act, be presented an appeal from an order denying the motion for a new trial. Only matters properly arising under section 3290 of the Compiled Laws as grounds for a new trial, to wit; (1) irregularity in the proceedings of the court; (2) misconduct of the jury, (3) accident or surprise, (4) newly discovered evidence, (5) excessive damages, (6) insufficiency of the evidence to justify the decision, and (7) error in law occurring at the trial and excepted to, can be considered by this court upon an appeal from an order denying appellant's motion for a new trial. Subdivision 1 of appellant's brief does not even state correctly the finding of fact therein referred to. The contract, the complaint, and all the evidence was not to the effect, as suggested by said subdivision, that the water agreed to be furnished by appellant should be furnished for use upon Section 14. On the contrary the contract provided for the delivery of the water on Section 14, near the line of Section 23, at a point to be designated on the line of the Candler Ditch during the irrigating season of each year. There is nothing in the evidence or in the contract even suggesting that the appellant should control or name the lands to which the water should be applied or upon which it should be used. The complaint charges that they failed to deliver at said point, designated by the appellant

itself, the quantity of water agreed to be furnished, and that the same was insufficient to irrigate certain lands in the possession and ownership of the plaintiffs during the year complained of. It appears from the testimony of Mr. Candler, and by other witnesses who were stockholders in the defendant company, particularly the testimony of Mr. Hardin, that the appellant designated the point on the line of the Candler Ditch in Section 14 for the delivery of the water and placed a box therein for its measurement, and undertook during the season to comply with its contract by the delivery of the water at that point. It was not the concern of the appellant as to what lands this water should be used upon. The proof shows that after a certain date the appellant absolutely failed and refused to deliver at the point it had designated the quantity of water contracted to be delivered and that, as a result of its failure and refusal, the crop of wheat grown on Sections 14 and 23, which sections, this court judicially knows, lie adjacent to each other, and the crops of alfalfa sown thereon valuable for pasturage were utterly ruined and destroyed.

III. The second contention of appellant, found in paragraph 5 of its brief, is that there is a conflict between findings 3 and 5 in this, that in finding 3 the court found that the defendant had agreed in writing to furnish 50 inches of water on land in Section 14, but nowhere found that the defendant had ever agreed to furnish any water upon Section 23, while in paragraph 5 of the findings the court found that the defendant had cleared and sowed the land in Sections 14 and 23. Again we call the court's attention to the contract. The appellant company did not undertake to furnish water for the irrigation of any particular land. The respondents did not designate, and were not required to designate under the contract, on what land they expected to use or apply the water. Under the contract it was the absolute right of the respondents to apply the water upon any lands they saw fit, and it was the duty of the company to deliver 50 inches of water on the Candler Ditch at a certain point designated. The mere suggestion of the contract as set up and of the finding of the court shows that there is no conflict whatever.

Not only is there no conflict between the findings, but no issue was made by the pleadings as to the liability of the defendant for failure, under the averments of the complaint, to furnish water upon Section 23. It was not an issue in this case. There is no assignment or specification of error suggesting a right of reversal upon that ground.

IV. As to the contention contained in the sixth paragraph of appellant's brief, that respondents were not entitled to pay for loss of crops raised on Section 23, it is sufficient to say, as has been heretofore said, that it was no concern, under the plain terms of the contract, of the appellant company as to what lands respondents used the water upon. When they delivered or attempted to deliver the water at a certain point on the Candler Ditch on Section 14, near the line of Section 23, they had complied with their contract. When they failed to deliver the 50 inches of water during the irrigating season at the point which they designated on the line of the Candler Ditch in Section 14, near the line of Section 23, and by such failure caused respondents to lose crops either on Section 23 or 24, or upon any other section for that matter, they became liable under the contract.

V. As to all matters of claim or contention respecting the crop that ought to have been produced but for the failure of the respondent to furnish water as it agreed upon Section 23, we have nothing more to add. As to the damages awarded, we can do no better than to refer to the opinion of the trial judge on the motion for a new trial, from which it appears allowance was not made for the seed, as claimed in the appellant's brief. The damages awarded are below that justified by the testimony, based both upon quantity and value which should have been produced had the appellant complied with his contract; neither was allowance made for the full market value of the crop, as shown by the testimony in the record. Mr. Gibson testified that wheat started at $1.20 per hundred, and ran up to $1.50.

VI. The contention that the evidence shows that the first crop was ready to cut on July 1st, by the testimony of James Burke, is not a fact. Mr. Burke is testifying as to the first crop of alfalfa, two crops of which are ordinarily produced

each year. The crop of alfalfa and timothy sown upon the land in controversy was valuable, by the undisputed testimony of Bahne, referred to by Judge Murphy in his opinion, only for fall pasture, and he placed the price upon that crop as for pasture, at $3 per acre. There is no other testimony in the record upon this point, and this must be taken as conclusive. Only one wheat crop, as it appears from all the testimony, can be produced during the one season, and it does not mature until later in the season. Judge Murphy, who visited the ground during the progress of the trial, explains the situation when he says, in his opinion, that the alfalfa and timothy that were sown that year with the expectation of pasturage and crops of hay during the next year were all destroyed for the want of water, with the exception of a few acres, and the necessity of reseeding made such failure, therefore, an element of damage. The proof as to the wheat crop, and undisputed, as shown by the testimony of Mr. Candler on the pages above referred to, was that no wheat at all was cut, but only a few loads of straw that were practically valueless, the stock even refusing to eat the same.

VII. We further contend that there is not a single assignment of error upon which to base the contention of appellant's brief, and that, therefore, the judgment should be affirmed.

*Mack & Farrington*, for Appellant, in reply:

I. It is true that judgment was rendered in favor of respondents on June 29, 1903, for the sum of $675.13 and costs amounting to $120.95. Notice of motion for a new trial was served and filed on July 10, 1903, and thereafter a statement on motion for a new trial was also filed and settled. The court did not hear the argument on motion for new trial until June, 1904, and on the 11th day of August, 1904, after due deliberation thereon, the court modified said judgment by deducting therefrom the sum of $150, holding the judgment to be erroneous to that extent. We think the proper construction of the language of section 3425, Comp. Laws, "from the final judgment in an action * * * within one year after rendition of judgment," is one year from the time the judgment became final by the court reducing the judg-

ment and changing the same from $675.13 and costs to $525.13. We contend that the judgment did not become final until the said 11th day of August, 1904. Had defendant appealed from the judgment of $675.13, and the supreme court had found no error therein and affirmed the same, then defendant would have been compelled to pay $150 of an unjust judgment. A judgment is final beyond question when the jurisdiction of the trial court is exhausted and the question it decided gone from its control forever. (*State* v. *Sutterfield*, 54 Mo. 394; *Kamp* v. *Kendrick*, 130 Ind. 546; *Western Union Tel. Co.* v. *Locke*, 107 Ind. 9.)

II.   Paragraph 3 of the complaint alleges that defendant agreed to furnish 50 inches of water on Section 14. The answer denies that defendant "failed or neglected to furnish plaintiffs the amount of water agreed to be furnished to said W. M. Candler by defendant under said agreement," etc. The same denial will be found in other parts of the answer, hence it will be seen that whether or not 50 inches of water was furnished upon Section 14 was one of the issues in the case. The finding of the court that defendant was to pay damages for loss of crops on Section 23 is in conflict with the pleadings, wholly unsupported by any evidence in the case, and excepted to by Mr. Wren.

III.   Again, counsel for respondents assert that there is no assignment or specification of error, etc., another assertion of counsel for respondents without foundation of fact. In notice of motion for a new trial, lines 24 to 27, inclusive, p. 453 of transcript, the defendant, by its attorney, Mr. Wren, asked for a new trial on the ground of "insufficiency of the evidence to justify the findings and decision of the court, and that the decision is against law." Section 3292 of the Compiled Laws says: "When the notice designates as the ground upon which the motion will be made the insufficiency of the evidence to justify the verdict or other decision, it shall be a sufficient assignment of error to specify that the verdict of the jury, or the decision, or judgment, or decree of the court is not supported by the evidence, or is contrary to the evidence. In such case, where it appears that the evidence, taken altogether, does not support the verdict, or

decision, or judgment, or decree of the court, a new trial shall be granted, or, upon appeal, the case shall be reversed without regard to whether there are express findings upon all the issues, or whether the specifications particularly point out the finding or findings, either expressed or implied, that are not supported by the evidence, or are contrary thereto." The finding that defendant is liable to pay damages for loss of crops on Section 23 is not supported by a scintilla of evidence in the case, but, on the contrary, is in direct conflict with the finding 3 and also in direct conflict with all the evidence in the case. The contract is clear that defendant was obliged to deliver water on Section 14, and the finding that defendant is liable for loss of crops on Section 23 is unsupported by any evidence in the case. Hence, it will be seen that the assignment of error comes clearly within the provision of the statute.

IV. In paragraph 6 counsel for respondents again assert that the findings of the court do not show that the defendant furnished all the water on Section 14 according to contract up to the 8th day of August, 1902. This assertion is in conflict with the findings. On page 448 of the transcript the court can see for itself that the lower court found as follows, commencing on line 23 of said page: "Defendant placed a box for the measurement of said quantity of water to be furnished plaintiffs under its said agreement. On or about the 10th day of May, 1902, defendant commenced to furnish and deliver said quantity to plaintiffs and continued to furnish that quantity until about the 8th day of August, 1902, when said defendant failed and refused upon repeated request and demand to furnish the quantity it had agreed to furnish, and the amount furnished during said last-named period was entirely insufficient to irrigate and cultivate said crops and lands," etc. This is just as counsel for appellant claimed the findings to be in its paragraph 7 of opening brief. Counsel for respondents ought not to find fault with the findings, or misquote, as the record shows they drew the findings themselves.

V. Counsel for respondents finally assert that the testimony of James Burke does not show that the first crop was

ready to cut July 1st. This assertion is in conflict with the evidence; see page 372 of transcript. We believe that the record shows beyond any question a number of errors of the trial court prejudicial to the defendant, such errors as he who reads may readily see.

By the Court, NORCROSS, J.:

This action was brought by the respondents against appellant for damages in the sum of $2,000 for breach of the conditions upon the part of appellant of a written contract to supply respondents with 50 inches of water for irrigation, which breach resulted in the loss of respondents' wheat and pasture crops for the year 1902, and the destruction of a considerable part of a stand of alfalfa and timothy upon the lands of respondents situated in Sections 14 and 23, T. 18 N., R. 20 E., in Washoe County. Appellant denied liability for, and also the amount of, the alleged damage. The case was tried before the court without a jury, and respondents were awarded a judgment against appellant for the sum of $675.13. A motion for a new trial was made by appellant in the lower court, and upon the hearing of the motion the court determined that it had erroneously allowed as a portion of the damages the sum of $150, an amount which represented the wages paid an irrigator. Respondents consented to a reduction of the judgment by striking out therefrom the said sum of $150, and, the judgment being so modified, the court overruled the motion for a new trial. From the judgment and from the order denying the motion for a new trial, defendant has appealed.

Counsel for respondents have moved to dismiss the appeal from the judgment upon the ground that the appeal was not taken within one year after the judgment was entered, as required by Comp. Laws, 3425. Final judgment in this case was pronounced by the trial court on the 29th day of June, 1903, and entered by the clerk in said cause on the 7th day of July following. The appeal was taken on the 19th day of September, 1904. The appeal from the judgment, not having been taken within one year from the time it was rendered by the trial court, is dismissed. (*Solomon* v. *Fuller*, 13 Nev.

276; *Kehoe* v. *Blethen*, 10 Nev. 453; Comp. Laws, 3425.) The motion for a new trial was made upon several grounds, only one of which has been urged upon this appeal, to wit, "insufficiency of the evidence to justify the findings and decision of the court, and that the decision is against law." The assignments of error do not include any general assignment to the effect that "the decision or judgment of the court is not supported by the evidence, or is contrary to the evidence," as provided may be done in Comp. Laws, 3292, but a number of particulars are specified in which it is alleged "the evidence is insufficient to sustain the findings and decision of the court." This court's consideration of the evidence therefore will be limited to such portions only as refer to the particulars specified in which it is claimed the evidence is insufficient.

The material part of the contract between the parties to this action, in so far as it affects questions presented on this appeal, is as follows:   "This agreement, made and entered into this 4th day of January, A. D. 1899, between the Washoe Lake Reservoir and Galena Creek Ditch Company, a corporation,   *   *   *   the party of the first part, and W. M. Candler,   *   *   *   the party of the second part, witnesseth: That the said party of the first part, for and in consideration of the covenants on the part of the said party of the second part, hereinafter contained, hereby covenants with the said party of the second part, that the said party of the first part will furnish to said party of the second part, his heirs or assigns, 100 inches of water on Section 22, Township 18 N., R. 20 E., in Washoe County, Nevada, to be designated by the party of the second part, on the line of that certain ditch known as the Candler Ditch, during the irrigating season of each year, for the period of three years; and 50 inches of water from and after the expiration of the said three years delivered on Section 14, near the line of Section 23, at a point to be designated on the line of the Candler Ditch during the irrigating season of each year.   *   *   *   And the said party of the second part, in consideration of the covenants on the part of the first party hereinbefore contained, agrees to and with the said party of the first part, that the said

party of the second part will pay to the said party of the first part, or its order, the sum of $2.50 per inch for all water furnished by said party of the first part to the said party of the second part to irrigate the first crop raised by the said party of the second part, and $2.50 per inch for water furnished by the said first party to said second party to irrigate the second crop raised by said party of the second part during the irrigation seasons of each year."

It has been strenuously urged by counsel for appellant that the evidence and the provisions of the contract show conclusively that the appellant never agreed to supply water for use on Section 23, and hence that appellant could not be mulcted in damages for loss of crop on said section. This contention does not seem to have been urged upon the trial of the cause, and it is questionable, under the assignments of error, if appellant is now in position to make it. Without passing upon the question of appellant's right to present the question, we cannot agree with counsel in the construction they place upon this contract. It is clear, we think, that the provision of the contract requiring appellant to deliver respondents 50 inches of water "on Section 14, near the line of Section 23 at a point to be designated on the line of the Candler Ditch," was only intended to fix the place of delivery, and that the water, being thus delivered to respondents, was theirs to conduct upon whatever lands they could conveniently use the same upon for irrigation purposes. It was therefore no concern of appellant upon what lands the water should be used.

Several alleged errors have been assigned which will not be considered, as they have not been presented in the briefs of appellant's counsel or in the oral argument. (*Gardner* v. *Gardner*, 23 Nev. 213; *Allison* v. *Hogan*, 12 Nev. 38.)

The following particulars are specified in which it is claimed the evidence does not support the decision of the court, and are all that require consideration:

"(2) The court made no allowance for the hay and wheat which Candler cut and used from the land to which the water was supplied by defendant."

"(4) The court made no allowance for the expense of rais-

ing, maturing, threshing, and marketing crops that the court held would have grown upon said land had sufficient water been supplied, but gave plaintiffs judgment for all that said crop would have brought in the market without deducting the expense of maturing and marketing the same."

" (10) There is no evidence to support that part of the finding of paragraph 5 that finds that the failure and refusal of defendant to furnish the quantity of water it had so agreed, and that plaintiffs were damaged by the loss of the wheat to the amount of $362.25, or in any other sum, or to the amount expended for alfalfa seed used in seeding said land, or in any other sum whatever, or to the amount of $150, or any sum for labor and board of one person employed to irrigate said lands and crops, or that the total damage sustained by plaintiffs is $675.13, or any sum greater than $225."

In passing upon the foregoing specifications it is necessary to determine whether the trial court adopted and applied a proper measure of damage for the loss of the growing crops. The measure of damage adopted by the trial court is expressed in its opinion, and is as follows: "The damages would be the value of the crops such as the witnesses should believe would ordinarily have been produced that year, deducting all expenses of raising the crop."

Is this rule for the measure of damages in cases of this kind entirely correct? The authorities do not all agree as to what is a proper rule for the measure of damages for loss or destruction of growing crops. It is generally held, however, that the measure of damages for the destruction of a growing crop is the value of the crop in its condition at the time of the injury. A still wider difference of opinion exists among the authorities as to the evidence that will be heard in determining such damage, as the following extracts will illustrate:

In Sutherland on Damages, sec. 1023, the author says: "In ascertaining the value of a crop in accordance with this rule a considerable latitude of inquiry is properly opened. The capacity of the land to produce crops being in question, evidence of the average yield of like crops upon similar lands in the neighborhood, under like circumstances and condi-

tions, is admissible, and also the average market value of the crop injured within reasonable limitations as to time and the expense of harvesting and marketing a like crop."

In Sedgwick on Damages, sec. 937, that author says: "In estimating the value of the crop, the prevailing rule seems to be to take its actual value at the time of the trespass, not its probable value, assuming that it would have matured. On the other hand, in *Smith* v. *Chicago C. & D. R. R. Co.*, the measure of damages was stated to be the difference between the market value of the crops when ripe and their value in an injured state, less the cost of growing them. This rule, however, is objectionable, because it assumes without proof that the crops would have come to maturity."

In *Burnett* v. *Great Northern Ry. Co.*, 76 Minn. 465, 79 N. W. 524, in discussing the rule as applied to the evidence in that case, the court says: "If the damages to the plaintiff's crops are to be estimated with reference to events occurring subsequent to the loss, such as the average yield of similar crops and the market value of the grain, the evidence indicates that they are excessive. But the measure of the plaintiff's damages for the loss of his growing crops was the value on the day they were destroyed, to be determined by facts existing at that time."

In the case of *Railway Co.* v. *McGowan*, 73 Tex. 362, 11 S. W. 337, that court said: "The crops were destroyed while growing, and before they had matured. As part of his evidence to establish their value at the time and place they were destroyed, plaintiff was permitted to prove the value of corn and potatoes of that year's crop in the fall after they had matured and were ready for market. We think the evidence was properly admitted. The only correct criterion for ascertaining the value of a growing crop at any period of its existence is to prove what that character of crop was worth at or near the place where it was grown when matured, and to make proper estimates and allowances from ascertained and ascertainable facts for the contingencies and expenses attending its further cultivation and care."

In the case of *Railroad Co.* v. *Pape*, in the same volume of reports, at page 501, 11 S. W. 526, the court again discussing

the same question, says: "It seems to us that, as a general rule, the most satisfactory means of arriving at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transportation to market. The difference between the value of the probable crop in the market and the expense of maturing, preparing, and placing it there will in most cases give the value of the growing crops with as much certainty as can be attained by any other method."

From an examination of many authorities we are convinced that a just and reasonable rule for the measure of damages for the loss of growing crops in cases like the one now before this court, where it appears that the crops have been entirely destroyed, or nearly so, and where there appears to be a reasonable certainty that they would have matured but for the wrongful act of the defendant, would be to allow the plaintiffs the probable yield of the crops under proper cultivation, the value of the yield when matured and ready for. market, and deducting therefrom the estimated expense of producing, harvesting, and marketing them, and also deducting the value of any portion of the crops that may have been saved. (*Railroad Co.* v. *McGowan, supra; Railroad Co.* v. *Pape, supra; Smith* v. *Chicago Ry. Co.*, 38 Iowa, 518; *Shotwell* v. *Dodge*, 8 Wash. 337, 36 Pac. 254; *Hopkins* v. *B. & M. Com. Co.*, 16 Mont. 359, 40 Pac. 865; *Carron* v. *Wood*, 10 Mont. 507, 26 Pac. 388; *People's Ice Co.* v. *Steamer Excelsior*, 44 Mich. 237, 6 N. W. 636, 38 Am. Rep. 246. And see, also, *Lommeland* v. *St. Paul Ry. Co.*, 35 Minn. 412, 29 N. W. 119; Sutherland on Damages, *supra*.)

In the written opinion and decision of the trial court and in the findings is contained a statement of the items which the court considered as going to make up the proper amount of damages to be awarded the plaintiffs, and they are as follows: Value of alfalfa and timothy seed planted, $67.88; value of wheat seed planted, $29; value of fall pasture, $102; value of wheat crop, $326.25; wages of an irrigator, $150—making a total of $675 13. As the judgment now stands,

after deducting the $150 heretofore stricken from the judgment, the plaintiffs have been allowed the sum of $428.25, the market value of the estimated crops of pasture and wheat, and including the value of the seed as above mentioned. The wheat seed was a necessary expense of producing the wheat crop, and therefore is not an element of damage. It is urged that for the same reason the value of the timothy and alfalfa seed should also be stricken out. This seed, however, was not planted for the purpose of producing a single crop, but to obtain a stand which would produce, ordinarily, two crops per year for many years without further seeding. The court found, because of the failure of the defendant to furnish water as agreed, that the stand of alfalfa and timothy was in the main killed out. The damage thus resulting was a damage to the realty itself, and would amount at least to the value of the seed planted to produce the stand.

There does not appear to be any evidence in the record of what would have been the probable cost of harvesting and marketing the wheat crop, and it does not appear that these expenses were considered proper deductions to be made from the estimated market value of the crop. Also, it appears that the only expense of producing the crops considered by the court was that of the wages of the irrigator. It, however, appears from the record that, if plaintiffs' crops had matured, a further and additional necessary expense of their production would have been the cost of water for irrigation. While, under the findings, the defendant is not entitled to anything in the nature of a counterclaim for water furnished, nevertheless it is necessary to consider what the water would have cost in order to determine the net profit, which plaintiffs should have derived from their crops, which, in brief, is the measure of their damage. Deducting what the water would have cost, to wit, $250, and the cost of the wheat seed from the judgment as now modified, and there would remain the sum of $246.13, from which there should yet be deducted the cost of harvesting and marketing the wheat crop. There is also evidence upon the part of plaintiffs that a small portion of the crop was saved, of the value of $15 or $20, which does not appear to have been taken into account in

the judgment. For the reasons given, we conclude that the judgment is not supported by the evidence, and it is ordered that, subject to the consent of respondents, the judgment be modified and reduced to the sum of $225, an amount admitted in appellant's specifications to be proper. If respondents shall within ten days from notice of this decision file their consent to a modification of the judgment by a reduction of the same to the sum of $225, then the judgment will be so modified, and the order overruling defendant's motion for a new trial will be affirmed; otherwise, the order is reversed and a new trial is granted. Appellant is entitled to its costs on appeal.