Smith v. Hicks.

---

[No. 1220. September 4th, 1908.]

S. C. SMITH, Appellee, v. DARIUS HICKS Appellant.

SYLLABUS.

1. The court's refusal to strike out portions of a complaint as redundant or as legal conclusions will not be reviewed where not prejudicial to the substantial rights of the moving party.

2. A lease provided that "party of the first part agrees to furnish water sufficient to irrigate land above described; said water to come from an artesian well located on land." Held, that the word "furnish" was used in the sense of "deliver"— that is, to provide with the right of possession and use—and the covenant was not complied with where the lessor had a

Smith v. Hicks.

well dug and the contractor locked it so that the lessee could not get water therefrom without breaking the lock, and thereby incurring danger of litigation or by bringing legal proceedings.

3. Where a lessor by breach of his covenant to furnish water for irrigation caused the destruction of the lessee's growing crop to the extent of rendering it worthless, the measure of damages was the value of the crop at the closest market, at maturity, less the cost of labor and attention that would have been necessary to raise and market it there.

4. In estimating the damages, evidence of the value of matured crop of like kind planted in the same neighborhood was competent.

5. In an action for breach of covenant in a lease to furnish water for irrigation, evidence held sufficient to support a judgment for plaintiff.

Appeal from the District Court for Chaves County before WILLIAM H. POFF, Associate Justice. Affirmed.

SCOTT & DUNN for Appellants.

The plaintiff is required to state the facts and must not load his complaint with conclusions of law. Enc. P. & P., vol. 12, p. 1022; Estee's Pleading, vol. 3, 4 ed. 4459; Bliss on Code Pleading, 3 ed., sec. 210, p. 328.

"In estimating the value of the crop the prevailing rule seems to be to take the actual value at the time of trespass, not its probable value assuming that it would have matured." Sedwick on Damages, sec. 937; Chicago etc. R. Co. v. Ward, 16 Ill. 522; Kankakee, etc. R. C. v. Horan, 17 Ill. App. 650; Ohio etc. R. Co. v. Nuetzel, 43 Ill. App. 108; Economy Light etc. Co. v. Cutting, 49 Ill. App. 422; Roberts v. Cole, 82 N. Car. 292; Ward v. Chicago etc. R. Co., 61 Minn. 449, 63 N. W. Rep. 1104; Burnett v. Great Northern R. Co., 76 Minn. 461, 79 N. W. Rep. 523; Foote v. Merrill, 54 N. H. 490; 8 A. & E. Enc. of Law, 2 ed. 610, 611; Gresham v. Taylor, 51 Ala. 500; International etc. R. Co. v. Benetos, 59 Texas 326; Taul v. Shanklin, 1 Tex. App., Civ. Cases, sec. 1135; Richardson v. Northrup, 66 Barb., N. Y. 85; Drake v. Chicago etc. R. Co., 63 Iowa 302, 19 N. W. Rep. 215; Hous-

ton etc. R. Co.v. Adams, 63 Tex. 200; Hays v. Crist, 4 Kan. 350; Galveston etc. R. Co. v. Tait, 63 Tex. 223; Gulf etc. R. Co. v. McGowan, 73 Texas 355, 11 S. W. Rep. 336; International etc. R. Co. v. Pope, 73 Tex. 501, 11 S. W. Rep. 526; Galveston etc. R. Co. v. Borsky, 2 Tex. Civ. App. 545, 21 S. W. Rep. 1011; Gulf etc. R. Co. v. Haskell, 4 Texas Civ. App. 554, 23 S. W. Rep. 546; Chicago etc. R. Co. v. Longbottom, Texas Civ. App. 1904, 80 S. W. Rep. 542; San Antonio etc. R. Co. v. Kiersey, Texas Civ. App. 1904, 81 S. W. Rep. 1045; Sabin etc. R. Co. v. Joachimi, 58 Tex. 456; Texas etc. R. Co. v. Young, 60 Tex. 201; Texas etc. R. Co. v. Bayless, 62 Tex. 570; Gulf etc. R. Co. v. Helsley, 62 Tex. 593; Houston etc. R. Co. v. Adams, 63 Tex. 200; Gulf etc. R. Co. v. Pool, 70 Tex. 713, 8 S. W. Rep. 535; Sabine etc. R. Co. v. Smith, 73 Tex. 1, 11 S. W. Rep. 123; Sabine etc. R. Co. v. Johnson, 65 Tex. 389; Gulf etc. R. Co. v. Nicholson, Tex. Civ. App. 1894, 25 S. W. 1023; Pallet v. Murphy, 131 Cal. 192, 63 Pac. Rep. 336; Gilbert v. Kennedy, 22 Mich; 117; Crow v. San Joaquin & K. R. Canal & Irrigation Co., 62 Pac. 562, 130 Cal. 309, rehearing denied, 62 Pac. 1058, 131 Cal. 192; Horres v. Berkeley Chemical Co. 57, S. Ca. 189, 52 L. R. A. 36; Fuller v. Edings, 11 Rich. L. 251.

The word "furnish" cannot be construed to mean "deliver." Chulan v. Princeville Plantation Co., 5 Hawaii 88; Southland Water Works Co. v. Howard, 13 Q. B. D. 217; Frances v. The State, 21 Texas 285.

The undertaking was joint and the risks attending the same were as much assumed by the plaintiff as defendant and they were to share near equally the profits or losses of the venture. Hale on Damages; Southerland on Damages, 3 ed., sec. 45 et seq.; 17 A. & E. Enc. of Law 21 and cases cited; Merriam v. U. S., 107 U. S. 441; Mississippi River Logging Co. v. Robson, 32 U. S. App. 520; Prentice v. Duluth Storage etc. Co., 58 Fed. Rep. 437; Rockfeller v. Merritt, 76 Fed. Rep. 909, 40 U. S. App. 666.

"Any unlawful taking of, or injury to personal property, of a forcible nature, amounts to a trespass, even

Smith v. Hicks.

though the defendant had no intention of committing a trespass." Taylor's Landlord and Tenant, secs. 767, 772, 7 ed. 656.

Reasonable physical force may always be used to put trespassers off one's property. Taylor Landlord and Tenant, sec. 178; Well Water Rights in Western States 249; Mechanic's Foundry v. Ryall, 75 Cal. 601, 17 Pac. Rep. 703; Butte etc. Co. v. Morgan, 19 Cal. 609, 616; McCarty v. Fremont, 23 Cal. 196; Heilbran v. Fowler Switch Canal Co., 75 Cal. 426, 17 Pac. Rep. 535, 76 Cal. 11, 17 Pac. Rep. 933; Crook v. Hewitt, 4 Wash. 749, 31 Pac. Rep. 27.

Where there is no sufficient evidence of a fact essential to plaintiff's case or the defendant's affirmative defense, a verdict should be directed. 6 Enc. of P. & P. 686 and cases cited; 27 Pac. Rep. 912; Gildersleeve v. Atkinson, 6 N. M. 250; Lutz v. Atlantic etc. R. Co., 6 N. M. 496, 30 Pac. Rep. 912.

PATTON & GIBBANY for Appellee.

The measure of damages of the growing crop destroyed by lessor's breach of covenant in failing to furnish water for irrigation, was the value of the crop at the closest market at maturity less the cost of labor and attention that would have been necessary to raise and market it. Gulf etc. R. Co. v. Carter, 25 S. W. Rep. 1023; Raywood Rice Canal and M. Co. v. Langford Bros. et al, 74 S. W. 926; Northern Colo. Irr. Co. v. Richards, 45 Pac. 423; Henning v. Arnwood, 41 S. E. 96; 13 "Cyc." 208, 209, notes 61-64; Houston Texas R. R. Co. v. Darwin, et al, 105 S. W. 825; 8 A. & E. Enc. 330 and cases cited under note 5; 2 Farnham on Waters, 2643, 2644; Long Irrigation, sec. 131, p. 273; 36 L. R. A. 423, par. 5, and cases cited by court; Mills Irrigation, sec. 213, p. 267, and cases cited under sec. 213; C. B. & Q. Ry. Co. v. Emmett, 53 Neb. 237, 73 N. W. 540.

"Furnish" means "deliver" under contract in question. 14 A. & E. Enc. 567; Enlow v. Klein, 79 Pa. St. 490; Watson Coal Co. v. James, 72 Ia. 184; Wentworth v. Tubbs, 53 Minn. 388; Glass v. Reeburg, 50 Minn. 386.

## STATEMENT OF FACTS

This is a suit for damages brought by the appellee S. C. Smith hereinafter called plaintiff, against Darius Hicks, appellant, hereinafter called defendant, upon special covenant in a lease to furnish water, which plaintiff alleges was broken by defendant.

The complaint alleges that on March 13, 1906, the defendant leased to plaintiff a certain quarter section of land in Chaves County, New Mexico, containing 160 acres of land for one year and agreed to furnish water sufficient for the irrigation of the land leased, from a certain artesian well to be sunk on a portion of the premises, in consideration of which the plaintiff was to prepare and seed said lands in certain crops, properly cultivate and irrigate said crops and deliver to defendant the share falling to him, at Dexter, N. M., and that plaintiff performed said contract on his part but defendant failed to furnish the water as contracted for in the lease, and by reason of such failure the crop died, with the result that plaintiff was damaged in the sum of $1,000.00.

To the complaint defendant directed a motion to strike out certain portions as legal conclusions and surplusage, which motion was overruled and defendant answered.

The defendant answered denying all the material allegations contained in the complaint. Denied that he failed and refused to furnish plaintiff with water with which to irrigate the crop; and alleges compliance with the terms of the lease contract; alleges that he caused to be brought in on June 9th, 1906, an artesian well located on the Northwest corner of the land described in the lease, with water sufficient to irrigate the whole of said demised premises, and that plaintiff being in full charge of said demised premises negligently permitted and allowed the well to be locked up, and failed and refused to use the waters thereof to irrigate the crops; that plaintiff's failure and refusal to secure the water was not the fault or neglect of the defendant, but that at the time plaintiff and defendant entered into the lease the plaintiff had full knowledge that the water to be furnished with which to irrigate the crops was to come from the well then being

bored, and that in addition to the well furnished by defendant, defendant notified plaintiff, before and after the well was brought in, not to allow the crop to die for lack of water, that defendant would pay extra for water from neighboring claims, and that plaintiff negligently and wilfully abandoned the premises on June 15th, 1906, and rented other lands and refused to cultivate the lands of the defendant and failed to use the water furnished by the defendant from the artesian well.

The defendant further alleged, by way of counter claim, that plaintiff was indebted to him in the sum of $100.00 as stipulated damages provided for in the lease because of his alleged breach of contract.

The plaintiff denied the new matter set up in the answer by reply.

The cause was tried to a jury upon the issues thus made, which resulted in a verdict in favor of the plaintiff, and his damages were assessed in the sum of $362.50.

Whereupon defendant filed a motion for a new trial, which was overruled and he prosecutes this appeal.

OPINION OF THE COURT.

McFIE, J.—The first error assigned is upon the overruling of defendant's motion in the lower court to strike out portions of the complaint as being redundant or legal conclusions.

There was no error committed in the overruling of this motion. "But even if the court had erred in overruling the motion, a reversal of the judgment would not follow. A party has no absolute right to have his adversaries pleadings pruned to suit his fancy. A reviewing court will only interfere in such matters where it appears that the denial of a motion to correct a pleading was not only erroneous, but prejudicial to the substantial rights of the moving party. Lincoln Mortgage & Trust Co. v. Hutchins, 55 Neb. 158."

In the case of Pfau Treas. v. Ketchum, Attorney General, 148 Ind. 539, the Supreme Court of Indiana says "that this court has repeatedly held, that the overruling, by the court below, of a motion to strike out a part of a

pleading, is not, on appeal, an available error here. The reason assigned for such decision is, that, at most, it can but leave surplusage in the record, which does not vitiate that which is good." Haddelson v. First Nat. Bank, 56 Neb. 247; Coddington v. Canady, 157 Ind. 243; Atchison etc. & Ry. Co. v. Marks, 11 Okla. 82.

There is nothing disclosed by the record in this case to show that the defendant was prejudicially affected by the ruling so as to bring the case within the exception referred to in some of the cases above cited.

While there are several assignments of error they all relate to the remaining questions in this case, namely:

1st. Did the defendant, Hicks, comply with his covenant in the lease, which is in the following language: "party of the first part agrees to furnish water sufficient to irrigate land above described; said water to come from an artesian well located on land."

2nd. Did the court submit to the jury in his charge the correct measure of damages.

3rd. Was error committed in the overruling of the demurrer to the evidence and refusal to give a peremptory instruction.

4th. Was error committed in overruling the motion for new trial.

We will consider these questions in the above order.

Considering then the first, it is found to be based upon two paragraphs of the court's charge and the refusal of the court to give two instructions requested by the defendant in the court below.

It became the duty of the court to charge the jury as to the meaning of the defendant's covenant in the lease "party of the first part agrees to furnish water sufficient to irrigate land above described; said water to come from an artesian well located on land."

The undisputed facts are, that at the time the lease was entered into March 13, 1906, work was progressing on the well by the contractor Fisher. The crops were planted as agreed upon in April, May and the last about the first of June. The oats came up and grew to be from 2 to 3 inches high, alfalfa 2 to 8 inches high, Indian corn

3 to 4 inches high.    All of these crops dried up and
died for want of water to irrigate them.    The final
flow of water was struck on the 9th day of June and
on the same day the Contractor Fisher, capped, put a
chain and padlock on and locked the well up so that
Smith the lessee, could not and did not get any water
from the well.    Smith was present when Fisher locked the
well, and protested verbally, to the extent of saying that
he would break the lock, but Fisher replied that he had to
do so to get a settlement with Hicks  and if he broke the
lock he would do it at his peril.    There was some corres-
pondence between Smith and Hicks who had gone to Illin-
ois some time before and was still there, in  which Hicks
told Smith to break the lock and take the water, Hicks
claiming that he did not owe Fisher anything.    Fisher
gave Smith the key to unlock the well July 5th, and he
then obtained water, and while some of the maize he had
planted then came up and continued to grow, it was too
late to mature, the frost killed it and it was worthless.

The evidence tended to show that although the crops
were planted and became growing crops they were total
loss to the plaintiff, and that the failure of the defendant
to furnish the water necessary as provided for in the lease,
was the cause of the loss.    Upon this branch of the case
the court charged the jury as follows:

"The first question for you to determine upon going
to your jury room is whether there has been a breach of the
contract in the respect alleged, that is whether or not the
defendant failed to furnish water sufficient to irrigate the
crops as provided by the lease here from the artesian
well located upon the premises.    The court instructs the
jury that plaintiff by the terms of the written lease sub-
mitted in evidence, was entitled to one half of the hay
and grain that might be produced on the west eighty acres,
and to all of the hay and grain produced on the east eighty
acres of the premises described in said lease and occupied by
the plaintiff during the year 1906, and that by the terms
of the said lease, the defendant was bound to furnish suffi-
cient water for irrigation of the crops planted by the plain-
tiff on said leased premises, and if you find from the

evidence, defendant failed to furnish water sufficient to irrigate the crops planted by the plaintiff, and that plaintiff lost his crops on said premises by reason of the failure of the defendant to furnish water sufficient for the irrigation thereof, then and in case you so find, your finding should be for the plaintiff.

"The court instructs you that the term used in the lease to furnish water sufficient to irrigate the land, said water to come from an artesian well located on the land, means in law the duty was imposed by law on the defendant to deliver to the plaintiff Smith for the irrigation purposes of the premises occupied by him under the lease in evidence a sufficient water source from which to irrigate said land. It does not impose the duty upon the defendant of being constantly in attendance for the purpose of seeing that this water was conveyed upon the premises, nor did it impose upon the defendant the duty of protecting the well from trespassers after the same had been completed and the water delivered to the plaintiff, because the duty rested upon the plaintiff to protect himself against trespasses, but the court charges you it was the duty of the defendant. Mr. Hicks, in the first instance under his contract to furnish water sufficient to irrigate the land, said water to come from an artesian well located on the land, it was his duty to deliver sufficient water from said well to the plaintiff Smith for the irrigation of the premises occupied by him under the lease in evidence.

"Now, the court charges you that if in case you find that the defendant within the terms of this instruction did furnish water to this plaintiff sufficient for the irrigation, then and in that event the plaintiff cannot recover because the breach of the contract relied upon has not been established by the evidence. If on the other hand you find that the defendant failed to furnish water sufficient to irrigate the lands in question from the artesian well referred to, it would become your duty to assess damages in favor of the plaintiff."

The argument of counsel for the defendant is, that the water was *furnished* to the plaintiff within the terms of the contract by defendant when the well was completed

Smith v. Hicks.

and capped by Alonzo Fisher, the contractor.   They further say, that if the plaintiff permitted the contractor to do some unlawful act on his premises it certainly would not be contended that Fisher, going beyond the scope of his employment and committing such unlawful act, could be the agent of defendant or bind the defendant.

If after the well was brought in, Fisher had permitted the water to run for a time and had Smith been permitted to use it, thus obtaining possession thereof, the argument of counsel would be quite forcible, as Fisher in seizing, and locking up the well would have been a trespasser against whom Smith would doubtless have been charged with the duty of defending his possession thereof, but under the facts here it is different.   The defendant had put Fisher in possession of the well under a contract to which Smith was not a party, and this contract gave Fisher a right to be upon the premises superior to that of Smith himself, as this right existed when the lease was executed.   Fisher refused to allow the well to flow for the use of Smith and immediately locked the well.   Smith protested to the extent of threatening to break the lock and take the water, but without effect.   The situation therefore on June 9th, was that to obtain the water Hicks had bound himself to furnish, the plaintiff must do an act of violence such as breaking the lock, thereby incurring personal damage and possibly criminal prosecution, or bring legal proceedings to obtain the use of the water, he had a right to be peaceably furnished by the defendant.   The word *furnished* as used in that lease, is used in the sense of delivery, that is to provide with the right of possession and use.   The water was to be furnished for the use of the plaintiff in raising crops and was not furnished, when, to obtain possession and use of it, the plaintiff would be required to incur personal danger or become involved in litigation.   Smith was not the agent of Hicks in regard to the sinking or paying for this well, Fisher was in possession with a claim of right and in our opinion the plaintiff was not required to do more than he did to obtain the water.

The views expressed as to the correctness of the

court's charge in effect disposes of 'the 9th and 10th assignments of error. Those assignments are based upon the refusal of the court to give to the jury instructions Nos. 3 and 4, requested by counsel for the defendant. No. 3 is substantially that if the jury believe that the well was brought in on June 9th, and that after the well began to flow Fisher locked it up, that Fisher's act was a trespass and the plaintiff had a right to remove the lock and use the water. No. 4 is to the effect that Smith as lessee had full right and authority to protect the place from all trespassers and that if Fisher locked up the well it was the right and duty of Smith to protect himself; against such trespass, and it was not the duty of the defendant Hicks to do so.

These instructions are along the line of defendant's contention that the plaintiff was compelled to break the lock and take the water and that the defendant was under no obligation to place the water at the disposal of the plaintiff as he had contracted to do.

In the case of Booth v. Spuyten Duyvil Rolling Mill Co., 60 N. Y. 487, the court says:

"While we are to determine the legal import of these provisions according to their own terms, it may be well to briefly recall certain well-settled rules in this branch of the law. One is that if a party by his contract charges himself with an obligation possible to be performed, he must make it good, unless his performance is rendered impossible by the act of God, the law, or the other party. Difficulties, even if unforseen, and however great will not excuse him. If parties have made no provision for a dispensation, the rule of law gives none—nor, in such circumstances can equity interpose. Dermott v. Jones, 2 Wall. 1; Cutter v. Powell, 2 Smith's Leading Cases."

It was within the power of the defendant to provide for this emergency when he executed the lease, but failing to do so, he must comply with its terms or be liable for the consequences.

The case of Pallett v. Murphy, 131 Cal. 192, is a case where Murphy was the owner of a ditch and obligated to supply water to the Rancho Paso de Bartolo tract of

Smith v. Hicks.

land part of which was leased to the plaintiff. The lessee offered to pay the water rates and demanded the water, which was refused on the ground that the defendant had disposed of all the water to other parties. The court held the defendant liable and affirmed the judgment for damages. In this case the lessee had a right to the water from the defendant's ditch on the land, but he did not take it by violent means. His right of action for damages was sustained, and we regard the law as laid in that case equally applicable to the present case.

Entertaining the views we have above expressed we think the court properly refused to give the jury these instructions.

Coming now to the main point of the case—that of the measure of damages, we find quite a conflict of authority upon that subject. An examination of the authorities also shows, that the measure of damages as applied to the leased lands and crops, depends to a considerable extent upon the condition of the lands and crops at the time of the alleged damage; that is, whether the lands have been planted or contain growing or matured crops, thus necessitating a different measure of damage, in accordance with the facts. This question of the measure of damages was before this court in the case of Stout v. Mogollon Gold & Copper Co., 91 Pac. 724; but the measure of damages adopted in that case is not controlling in this inasmuch as the plaintiff Stout sued to recover damages for the destruction of trees and vines which pertain to the real estate as well as for crops and different measure of damages is found to exist as between real estate and growing crops.

As to the measure of damages in this case, the court instructed the jury as follows:

"The court charges you that the only damages claimed in this case are damages resulting from the loss of the crop in question. The court instructs you upon this point that the measure of damages in this case is the value of the crop at the time it was destroyed, if it was destroyed through the fault of the defendant, and the value at maturity and the labor necessary to put the crop in a condition for marketing are the data from which to es-

timate this value. The value of the crop at maturity would be its value on the farm where it is produced or at the closest market. If you find from the evidence that by the negligence or failure of the defendant to furnish water sufficient to irrigate the crops of the plaintiff, that said crops were wholly destroyed, or were destroyed to such an extent as to be worthless, then the plaintiff's damages, if any, would be the value of such crops on the market at maturity, less the cost of labor, care and attention necessary to put the crops in condition for the closest market and, upon such market.

"The court charges you that in determining, if this branch of the case becomes material, what the value of such crops would be at maturity, you have a right to take into consideration the results which came from crops situated upon similar land in that immediate vicinity under irrigation and from this data you are permitted and it is your duty to proceed to the determination of what would have been the results in the crops upon the land in question. And from the value of the crops upon the adjacent lands or similar lands you may determine what would have been the value of these crops on the property in this section, you have a right to take into consideration from the experience of crops upon neighboring lands to what extent these crops if they had been allowed water would have arrived at maturity and if you find from the evidence that the crops upon adjoining lands to a considerable extent did not reach to maturity by reason of the character of the season or otherwise, these are circumstances you have a right to consider in determining to what extent, if any, the plaintiff had been damaged in this case."

The defendant submitted and requested the court to give the following instruction as to the proper measure of damages.

"If you find from the evidence in this case, under the instruction heretofore given you, that the plaintiff is entitled to recover anything from the defendant on account of defendant's failure to furnish water, as alleged in the complaint, then I instruct you that the amount which the

Smith v. Hicks.

plaintiff can recover is the difference between the rental value of the premises described in the complaint without water, and the value of their rental value with water; and if you should find for the plaintiff you will assess his damages for the sum as the evidence may have shown the rental value of the land with water to be in excess of the rental value without water."

Briefly stated, the court charged the jury, that "if they found from the evidence that the crops were wholly destroyed or were destroyed to such an extent as to be worthless, then the plaintiff's damages, if any, would be the value of such crops on the market at maturity, less the cost of labor, care and attention necessary to put the crops in condition for the closest market and upon such market." While the measure of damages contended for by counsel for the defendant is "that the amount which the plaintiff can recover is the difference between the rental value of the premises described in the complaint without water and the value of the rental value with water."

There is no doubt that the measure of damages contended for by the defendant's counsel is supported by quite a number of the decided cases, and is no doubt the true measure of damages in some jurisdictions, especially in cases where on account of failure to obtain water crops were never planted.

Counsel for the defendant are to be commended for their diligence in referring the court to almost every case to be found in the books, supporting even remotely, their contention.

Their main reliance, however, is upon two cases from the state of California, namely Crow v. San Joaquin Irr. Co., 130 Cal. 310; Pallett v. Murphy, 131 Cal. 192.

These cases hold that the true measure of damages under the facts is the difference between the rental value of the land with and without water for irrigation. But in those cases there were no growing crops on the land, to be destroyed, as the crops were never planted owing to the failure to obtain water; and further, the lessees were evidently paying rent for the land, judging from

the reference of the court, although not directly stated. The authorities show that a different measure of damages prevails where crops have been planted and destroyed in whole or in part.

The case of Teller v. Bay & River Dredging Co., 151 Cal. 209, is a case on all fours with the present case, and was decided in May, 1907, being reported in the last volume of California reports published up to this date.    The lands were rented for a share of the crops and the suit was brought by the tenant for the total destruction of growing crops.    The syllabus which is supported by the opinion of the court as to the measure of damages, is as follows:

"In an action by a tenant entitled to three-fourths of a crop for the total destruction of the crop while growing, the court in arriving at the value of the crop at  the time of its destruction found the probable yield of the crop and the market value thereof, deducting therefrom the cost of producing and marketing the crop, and deducting therefrom one fourth of such value as the landlord's share, *Held* the true measure of damages."

As will be seen, the measure of damages in this case is practically the same as that given the jury on the charge of the court in this case.

The court's attention was called to the fact, that the measure of damages was different from that declared in 130 Cal. supra, but the court overruled a motion for a rehearing of the case.

From this it appears, that in California, in an action for the destruction of growing crops, the measure of damages is not that contended for by the defendant, but is that which the court submitted to the jury in this case.

The court in his charge, speaking of the measure of damages, said: "The court instructs you upon this point that the measure of damages in this case is the value of the crop at the time it was destroyed, if it was destroyed, through the fault of the defendant, and the value at maturity and the labor necessary to put the crop in condition for marketing are the data from which to establish this value."

Smith v. Hicks.

The court here lays down the general rule as to measure of damages in case of the destruction of growing crops, that it is "the value of crops at the time of their destruction". In an extensive note in support of the case of Candler et al v. Washoe Lake Reservoir and Galena Creek Ditch Co., 28 Nev. 151, reported in American and English Annotated cases, Vol. 6 p. 949, the author cites the states of Alabama, Arkansas, California, Colorado, Indiana, Michigan, Minnesota, Missouri, New York, Oregon, Utah and Nevada, as adhering to this measure of damages. As the court below in his charge pointed out, there is a marked difference between the measure of damages and the mode from which the value at the date of destruction is to be ascertained.

In Teller v. Bay & River Dredging Co., 90 Pac. 942, the court discusses this matter as follows:

"This question thus turns upon the mode of ascertaining the value of the growing crop at the time of its destruction. The appellant contends that the rental value of the land, with the cost of labor and materials up to the time of the destruction expended in producing the crop, with legal interest thereon, furnishes the correct method of arriving at this value. Such a method finds support and has been adopted by the Supreme Court of South Carolina; 35 S. E. 500, 57 S. C. 189, 52 L. R. A. 36. The objection to this method is that it is not a determination of value at all. It is but a determination of cost, which, while always an element of value, never furnishes its exact measure. By such a method of computation nothing is allowed for the fact that the crops, simply as growing crops, and before maturity, are necessarily an expense and not a profit to the owner. They are of value to him not as growing vegetation upon his land, but because in the course of nature they will come to fruition, and so have a market value, and so will bring to him profit of his disbursement and expenses in their care and maintenance. Moreover, in taking cost as the measure of value, there is lost sight of the fact that by the destruction of the crop it cannot for that year at least be replaced, and that the very possibility, aside from the reasonable expecta-

tion of future profits is forbidden to the agriculturist, And, finally, that cost cannot be the measure of the detriment under such circumstances ought to become patent from consideration of the fact that if you should upon successive years destroy the farmers' crops, and in full compensation therefore pay him only the money which he had expended in their growth, up to the time of destruction, you could in a very short time starve to death every agricultural community in the United States.

The court after stating the above reasons for the adoption of the measure of damages, in the court below, commended the rule contained in the following instruction "in arriving at the value of the crops as they then stood (at the time of their destruction) and in the condition in which they were, the court has adopted as the best means available, the probable yield of each tract multiplied by the market value of the crop, deducting therefrom the cost of producing and marketing said crops, and deducting therefrom the one-fourth of such value as and for the landlord's share." While stated in different language, the measure of damages above stated, is identical with that given the jury in the present case, except the reference to the landlord's share. As to that, however, the court below, in another part of his charge informed the jury plainly, that the landlord was to receive one-half of the crops raised on the west eighty acres and the tenant all of the remaining crops, thus precluding the idea, that the jury miscalculated the damages.

The court stated at the time of the trial that he would adopt and give the jury, the measure of damages laid down by the Texas courts. On examination of the decided cases, in that state, it is found, that up to and including 1894. the measure of damages for the destruction of growing crops was held to be "the difference between the value of the crops before and after the injury, and is not ascertained by their probable worth at maturity less expenses in maturing." 6 Am. & Eng. Ann. Cases 950.

But, beginning with the case of Galveston etc. R. Co. v. McGowan, 73 Tex. and including decisions rendered in the year 1904, the Texas courts have adopted a different

rule, (which is the rule laid down by the court below in this case), that the probable yield of the crops, with a deduction for the expenses of fitting for market, should be taken as the measure of damages. Galveston etc. R. Co. v. McGowan, 73 Tex. 355; International etc. R. Co. v. Pope, 73 Tex. 501; Galveston etc. R. Co. v. Parr. 8 Tex. Civ. App. 280; Chicago etc. R. Co. v. Longotton (1904) 80 S. W. (Tex.) 542; San Antonio etc. R. Co. v. Kiersey (1904) 81 S. W. (Tex.) 1045; 6 Am. and Eng. Ann. Cases 950.

In Shotwell v. Dodge, 8 Wash. 337, the measure of damages adopted was the market value of the crops over and above the cost of producing, harvesting and marketing the same. In Carron v. Wood, 10 Mont. 500, the measure of damages was held to be, the net profit which the owner would have realized from the crops planted on the land had the same been irrigated, after deducting the expense necessarily involved in raising and marketing them.

In Candler et al. v. Washoe Lake Reservoir, etc. Co., 28 Nev. 151, the measure of damages was held to be, "the probable yield of the crops under proper cultivation, and the value of such yield when matured and ready for market, less the estimated expense of production, harvesting and marketing, and less the value of any portion of the crops that may have been saved."

The case of Northern Colorado Irrigation Co. v. Richards, 45 Pac. 423, was a case involving a partial destruction of growing crops and the measure of damages adopted by the court was "the difference between the amount realized from the crops and the amount that would have been realized had water been furnished, less the cost of raising, harvesting and marketing."

All of these cases are from the irrigation states and are quite recent cases, and while the language is slightly different, the measure of damages in all is substantially the same as the Texas rule given for the guidance of the jury in this case. The criticism of this rule by the courts adopting a different one, is the element of uncertainty therein, but it must be conceded that there is more or less uncertainty in whatever measure of damages may be adopt-

ed in such cases, but it is reasonable to believe that the courts in the irrigation states, take the view, that the element of uncertainty as to the maturing of the crops planted, is reduced to a minimum where water is provided by irrigation, and this may serve to explain the adherence to the measure of damages above referred to. Certain it is, that the measure of damages contended for by appellant finds little or no support as a proper measure of damages under the circumstances of this case, outside of the two cases from California above referred to, and the later cases from the same court do not sustain those cases.

The court permitted some witnesses to testify over the objection of defendant, as to the value of matured crops of like kind with those planted in the neighborhood where the crops were planted, and this action of the court is assigned as error.

This character of evidence is competent in a case of this kind, and such testimony has been held admissible in several of the cases above referred to.

In the case of Lester et al. v. Highland Boy Gold Min. Co., 27 Utah 470, the court says:

"In cases of destruction of growing crops it is proper and important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land not destroyed and on other similar lands in the immediate neighborhood, cultivated in like manner, the stage of growth of the crops, at the time of injury or destruction, the expense of cultivating, harvesting and marketing the crops, and the market value at the time of maturity, or within a reasonable time after the injury or destruction of the crops."

At the close of the case for the plaintiff, counsel for the defendant, demurred to the evidence, and at the close of the case, defendant's counsel requested the court to instruct the jury to find for the defendant, for want of evidence to support a verdict for the plaintiff. The demurrer was overruled, the instruction was refused and the ac-

tion of the court is assigned as error. As there was sufficient competent evidence to support the verdict rendered no error was committed in the action taken nor was there error committed by the court in overruling of the motion for a new trial, under the view we take of this case.

There being no reversible error in the record, the judgment of the lower court will be affirmed with costs. It is so ordered.