[No. 1107.  Decided March 1, 1894.]

JAMES H. SHOTWELL *et al.*, *Respondents*, v. R. B. DODGE,
*Appellant.*

APPEAL — BILL OF EXCEPTIONS — DIVERSION OF WATERS — ACTION
BY RIPARIAN PROPRIETOR — PLEADING — DAMAGES.

Where the record on appeal contains an exception to the refusal
of the court to grant a new trial on the ground of the insufficiency
of the evidence, and a bill of exceptions is made a part thereof for
the purpose of bringing the evidence into the record, it is unneces-
sary that the bill of exceptions contain any assignment of error.

In an action by a riparian proprietor of lands for damages for
the diversion of water from a flowing stream, it is not necessary that
the complaint allege that the plaintiff had the right to use the water
of the creek, or any portion of it.

Where a lower riparian proprietor can make use of the waters
of a flowing stream for purposes of irrigation and domestic use only
by means of a dam which floods the waters back upon the land of an
upper riparian proprietor, he is not in a position to recover damages
for the diversion of a portion of the waters of the stream by the
upper proprietor.

Where an upper riparian proprietor diverts a considerable por-
tion of the water from a flowing stream without showing a reason-
able use thereof, a lower proprietor is entitled to nominal damages.

In an action for special damages for the loss of a hop crop by
reason of the diversion of the waters of a stream so as to deprive
the irrigating ditches of a riparian proprietor of water, the measure
of damages is the market value of the crop alleged to be lost over
the cost of producing, harvesting and marketing.

*Appeal from Superior Court, Thurston County.*

*James A. Haight*; for appellant.

*John P. Judson*, for respondents.

The opinion of the court was delivered by

STILES, J.—The respondents move to strike the bill of
exceptions containing the evidence in this case, on the
ground that no error is assigned upon any matter excepted

to in the bill itself.   The point, we think, is not well taken. The exception is contained in the record, being an excep- tion to the refusal of the court to grant a new trial on the ground that the verdict was not sustained by the evidence. The bill of exceptions is merely a part of that exception, containing as it does all the evidence introduced at the trial.   Where the error alleged is the refusal of the court to grant a new trial on the ground of the insufficiency of the evidence, the only way to correct the error in this court is by presenting all the evidence in the case, either in the form of a bill of exceptions or statement of facts.   The motion is, therefore, denied.

The complaint in this case is for the diversion of water from a flowing stream, to the plaintiffs' damage.   The com- plaint alleges that the plaintiffs were, at the date of the commencement of the action, and at all times in the com- plaint mentioned, the owners of a certain tract of land de- scribed, and were in possession thereof; and that they and their grantors had owned said land and been in the sole and exclusive possession of the same since the year 1854; that the defendant owned a half section of land lying im- mediately north of and adjoining plaintiffs' tract; that through the lands of both parties a brook or creek, viz., Mima creek, flowed from north to south within a well de- fined channel protected by natural banks; that plaintiffs in 1891 built a dam across Mima creek upon their own land, constructed various ditches therefrom to irrigate their lands in connection with their farming operations in raising hops, grain, vegetables and fruits, and also for the purpose of conveying the waters of the stream to their dwellings and barns, to use the same for domestic purposes; that the land was entirely dry, and without irrigation was not pro- ductive; that in 1892 the defendant built a dam across the creek on his land, whereby he completely stopped the water from flowing in its accustomed channel through plaintiffs'

land, as it was accustomed to flow, and from flowing into and through plaintiffs' ditch; that in connection with his dam the defendant also constructed a ditch by which he carried the waters of said creek eastward over his own land where he permitted it to scatter and waste without providing any artificial channel for its return to the bed of the creek.

The damages laid for a diversion of the water were $5,-000, and special damages were also pleaded by showing that a crop of hops which plaintiffs grew on their lands in 1892 were decreased in value in the sum of $1,000, and $250 was claimed for the plaintiffs' deprivation of water for domestic purposes.

The defendant demurred to this complaint for the reason that there was no allegation that the plaintiffs had the right to use the water of the creek or any portion of it. It will be observed that one of the grounds of damage alleged is the mere diversion of the water from its accustomed channel, and appellant's position is, that such action, coupled with the allegations of waste which the complaint contains, is insufficient in law to base a claim of damages upon. Every owner of land through which a natural stream of water ordinarily flows is entitled to have such flow continued without interruption or diminution, except as the interference may be caused by the reasonable use of water by other proprietors of the stream higher up along its course. To sustain an action for damages of this character no allegation of any actual use is necessary. The right to the flow is absolute, and when that has been interrupted the right to nominal damages is complete. *Parker v. Griswold*, 17 Conn. 287.

We have examined numerous precedents for complaints in such cases, including those cited in 2 Chitty's Pleadings (6th ed.), 624, *et seq.*, and those noted in 2 Boone on Code Pleading, 326; and without exception they contain in each

instance an allegation of the right to use flowing water. But in view of the fact that this right to the uninterrupted flow of water is a part of the land itself, we see no necessity for an allegation that the owner and possessor of the land is also the possessor of this right, because the ownership and possession of the land implies the ownership and possession of the right as well. Counsel urges that the right is separable from the land, and might have been conveyed, or the right to the use of the water by some other party might have been acquired by prescription. But it must be remembered that the wrong complained of is a trespass, and by analogy with other cases of trespass upon real property the allegation would be unnecessary. It is a trespass for one person to step upon the land of another, and damages may be recovered therefor, but it is not necessary in such case that the pleader allege that the plaintiff had a right to have the grass upon which the trespasser trod continue to grow after the manner of its nature. A complaint for the injury or destruction of trees need not allege that the owner and possessor of the land upon which the trees grew had a right to have them continue to grow. In each case if, as a matter of fact, the owner of the land has parted with the grass or trees to some third person, who in that case would be the injured party, it is the privilege and duty of the defendant to plead those facts as his defense. So, if the land owner has parted with his right to the flowage of water, where the gravamen of the action is the interruption of the flow, the alienation is matter of defense.

The only other error alleged in this case is, that the evidence did not justify the verdict, and upon that point we find it necessary to agree with appellant. The jury found a verdict for $850. Under the facts shown we think the evidence sufficient to have justified a verdict for nominal damages against the defendant for the diversion of the

water. He confessed to the building of a dam in the bed of the stream, and to the diversion of a considerable portion of the water therefrom, and showed no reasonable use thereof.

So far as his use of the water for domestic purposes was concerned, his acts might possibly have been sustained, but his pretended irrigation seems to have amounted to nothing more than the digging of a single ditch for a long distance through his farm, and allowing the water to flow freely through it until it became lost at the end of the ditch. The soil through which the ditch passed was of such a character that a very large amount of water would necessarily be lost in its mere passage through the ditch. Allowance must of course be made for some such loss, but when the loss becomes extreme by reason of the porous character of the soil, and water is scarce, it becomes necessary for an irrigator to take reasonable means to lessen the amount of loss.

As to defendant's irrigation itself, it amounted to nothing more than suffering the water in the ditch to percolate sidewise through the banks along which certain orchard trees and garden vegetables were growing. This was not irrigation at all; much less, reasonable irrigation. Where water is an important feature in the success of farming operations, it becomes the irrigator to use proper means to bring water to points where it is needed, to use it only at such times and in such quantities as are necessary for the purpose, and then, if others situated like himself require the water, to stop its flow until it shall again become necessary. The constant flow of water in the ditch all the summer through to the extent to which the defendant caused the water of Mima creek to flow would be inexcusable under any circumstances, when others had equal need of the water for irrigation.

But beyond this nominal damage the plaintiffs showed

no facts upon which a substantial recovery could be based.
At the highest point on the creek on their farm, immedi-
ately adjoining the defendant's land, they also constructed
a dam nine feet high and dug a ditch.   The point at which
their ditch left the creek seems to have been a difficult
one from which to take out water, but their object was to
run the water at a right angle from the creek a distance
of from a quarter to a half of a mile and there discharge
it at a high point on their land, so that it would irrigate a
large area which they had planted in various crops.   To
accomplish this purpose at all the bottom of their ditch
had to be some five feet above the level of the stream.
Their dam, therefore, as stated before, was nine feet high,
and the water had to be set back in the reservoir or pond
to the depth of at least six or seven feet before it would
make the required depth in their ditch.   The effect of this
was to set the water back upon the defendant's land so
that it overflowed a half acre or more.

Conceding that it was competent for the plaintiffs to
build their dam where they did, they had no right to cause
the water to spread itself out in a pond on the defendant's
land.   Just how high they could raise the water at their
dam before it would flow back on to defendant's land did
not appear; and neither did it appear that without such
reflow of the water they would have had any water what-
ever in their ditch.   They cannot base their right of action
upon a wrong committed by themselves, and until it be
shown that without committing such wrong ·to defendant
their ditch would have furnished the water of which they
say they were deprived they cannot maintain their action.

As to the evidence of damage, nothing was shown as to
the damage suffered by deprivation of water for domestic
use, except that it was sometimes necessary to carry water
from the stream to their houses, a quarter of a mile distant,
instead of getting it from the ditch.   But, while they would

have had a right to complain of their loss for domestic purposes had none been left in the stream, as there was, in fact, at all times abundant water for such purposes in the stream, they cannot complain that their ditch did not furnish it at the distance at which their houses stood unless it be shown that when the water in the dam was lowered, so as to relieve defendant's land from the reflow, water would still have been served to their houses in the ditch. Moreover, nothing was shown as to what amount of inconvenience or loss of time or labor was involved in getting the water for domestic purposes from the stream.

As to the hops, it appeared that, in 1891, seventy-nine bales of hops were raised on ten acres when water was plenty, and that in 1892 from fifteen acres only fifty-nine bales were raised, water being scarce. The difference in the quantity of hops in the two years was some 14,000 pounds, estimating the additional five acres of 1892 as full bearing hops; but it was shown that this was the first year of those five acres, when they were not expected to bear to any profitable extent. Conceding, however, that there was a considerable loss by reason of the want of water, the evidence merely showed that hops were worth from 13 to 22 cents a pound in 1892, and the case was left to the jury upon the inference that the gross amount of hops at the price of hops in that year would have been the actual loss. But such is not the measure of damages in such cases. The net loss is all that can be recovered, viz., the market value of the crop alleged to be lost over the cost of producing, harvesting and marketing. *Lommeland v. St. Paul, etc., Ry. Co.*, 35 Minn. 412 (29 N. W. 119); *Holden v. Lake Co.*, 53 N. H. 552; Sedgwick on Damages, §§ 191, 937; *Smith v. Chicago, etc., R. R. Co.*, 38 Iowa, 518.

But, as was said before, until it should appear that with the water at the dam lowered to a point where it would not flow over defendant's land, there would have been water

enough in the ditch to have saved the hops, there could be no recovery for their loss.

Judgment reversed, and cause remanded for a new trial.

ANDERS and SCOTT, JJ., concur.

HOYT, J. (*concurring*).—I concur in the result and in what is said as to the damages, but not in what is said as to the sufficiency of the complaint, as to which I express no opinion.

· DUNBAR, C. J., dissents.