[No. 6627.  Decided November 19, 1907.]

CHARLES N. PARK, *Respondent*, v. NORTHPORT SMELTING & REFINING COMPANY, *Appellant*.[1]

DAMAGES—INJURIES TO PROPERTY—TREES—MEASURE OF DAMAGES. In an action for damages from the destruction of growing trees, the measure of the damages is the loss or diminution in the value of the premises.

SAME—PLEADING. Where damages for the destruction of growing trees would be the same whether measured by the value of the timber or of the diminution in the value of the premises, it is immaterial upon what theory the complaint was drawn.

EVIDENCE—OPINIONS—INJURY TO TREES—WITNESSES—COMPETENCY. In an action to recover damages for the destruction of growing trees, witnesses qualified as experts on real estate values are incompetent to testify as to the loss sustained, where no attempt was made to qualify them as to the market value of the timber.

[1]Reported in 92 Pac. 442.

DAMAGES—INJURY TO TREES—TRESPASS—LIMITATIONS—EVIDENCE. In an action for damages to growing trees by reason of the operation of a smelter during and for several years prior to the running of the statute of limitations, the damages cannot be determined by evidence of the value of the land at the time of the commencement of the action as compared with two years previously, where it appears that much of the timber was destroyed without the statutory period, but rotted and decayed within the statutory period.

WITNESSES—COMPETENCY—DAMAGES — EVIDENCE — VALUE OF TIMBER. In an action for damages from the destruction of growing trees, a witness is competent to testify as to the number of thousand feet of saw timber on the land, although he was not an expert cruiser, where it appears that he measured the fallen trees and ascertained the number of feet therein and estimated the standing trees by comparison with the fallen trees of the same size.

DAMAGES—CERTAINTY. The difficulty of proving damages to growing trees during the period of the statute of limitations is no bar to a recovery of substantial damages.

WITNESSES—COMPETENCY—KNOWLEDGE OF FACTS. A witness knowing the fact from observation and experience may testify that trees were destroyed by the fumes from a smelter, although without expert knowledge.

Appeal from a judgment of the superior court for Stevens county, Carey, J., entered June 25, 1906, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages from a nuisance. Reversed.

*C. S. Voorhees, Reese H. Voorhees,* and *F. Y. Wilson,* for appellant.

*Slater* and *Allen,* and *Jesseph & Grinstead,* for respondent.

PER CURIAM.—This action was brought to recover damages for injuries caused to certain forest trees by the smoke and fumes from the Northport Smelter. The complaint alleged ownership of a certain tract of land in the plaintiff; that prior to the damage and injury complained of there was standing and growing on the land, in a healthy, thrifty condition, a large quantity of forest trees, suitable for saw timber and cord wood; that such forest trees would produce 600,000 feet

of saw timber and 2,500 cords of wood, of the reasonable value of $1,999; that for the two years next preceding the commencement of this action the defendant operated a smelter at Northport, about four miles from this land, and smelted thereat 1,000 tons of ore daily, about ten per cent of which consisted of sulphur; that the smoke and fumes caused by such smelting totally destroyed the forest trees aforesaid; that the plaintiff's said land was of the reasonable value of $3,500 with the trees standing and growing thereon, but by reason of the destruction of the timber is not worth to exceed $1,500, and that the plaintiff has been damaged by the wrongful acts complained of as follows:

"Saw timber destroyed as aforesaid . . . . . . . . . . . $   600.00
"Cord wood destroyed as aforesaid . . . . . . . . . . . .   1,399.00
                                                         ──────────
    "Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $1,999.00"

The trial resulted in a verdict and judgment for the plaintiff in the sum of $500, and the defendant has appealed.

The first question discussed by counsel is the measure of damages in this class of actions. We think the better rule is that, where the wrong consists in the removal or destruction of some addition, fixture, or part of real property, the loss may be estimated upon the diminution in the value of the premises, if any results; or upon the value of the part severed or destroyed, and that valuation should be adopted which will prove most beneficial to the injured party, as he is entitled to the benefit of his property intact. 28 Am. & Eng. Ency. Law (2d ed.), 543; *St. Louis etc. R. Co. v. Ayres*, 67 Ark. 371, 55 S. W. 159; *Argotsinger v. Vines*, 82 N. Y. 308; *Dwight v. Elmira etc. R. Co.*, 132 N. Y. 199, 30 N. E. 398, 28 Am. St. 563, 15 L. R. A. 612.

The appellant contends that the respondent in this case elected to sue for the value of timber destroyed and is bound by that election. We think the complaint was broad enough to warrant a recovery on either theory, but the question is of little importance here, as it was conceded by the complaint

and the proof that the damages under either rule would be the same, viz., the market value of the timber destroyed. To prove the issues on his part the respondent qualified his witnesses, by showing their familiarity with the land, and their general knowledge of land values in the neighborhood. He then propounded substantially the following questions to each of his four witnesses:

"State to the jury the value of Mr. Park's land on the 5th day of August, 1905, [the date of the commencement of the action] taking into consideration the condition of the timber at that time."

"State what the value would have been on August 5, 1905, had the timber been in the same condition that it was on August 5, 1903."

The witnesses were permitted to answer both of these questions over the objection of the appellant, the answers showing a difference in value of from $1,500 to $2,000. We think this testimony was incompetent for two reasons. First, the witnesses were not qualified. The sole issue in the case was the market value of certain timber, and in the nature of things the witnesses could not testify to that fact, unless they had at least some knowledge of the kind, quality, quantity and value of the timber in controversy. No attempt was made to qualify the witnesses in any of these respects, and a mere general knowledge of land values would not so qualify them.

In the second place, the respondent's testimony showed that the smelter had been in operation some six or seven years prior to the commencement of the action, and that considerable injury had resulted to the trees in question without the period of the statute of limitations. In answering the questions propounded, the witnesses necessarily took into consideration timber killed and destroyed by the wrongful act of the appellant without the statute of limitations, but which was of value within the statutory period and thereafter rotted and decayed. For such injury the respondent was not entitled to recover. In other words, the respondent could not recover

the value of timber destroyed without the statutory period, even though the timber may not have rotted or decayed until within the statutory period, and it appears from the testimony that much of the timber was in this condition.

We regret the necessity which compels us to reverse the judgment on this ground, as the respondent was compelled to prove his case in this way by erroneous rulings of the trial court. He sought in the first instance to prove his damages in a proper manner, but objections to his testimony were sustained. Thus, while the respondent was on the witness stand the following proceedings took place:

"Q. State to the jury if you estimated that timber according to any method? A. Yes, sir, I did. Q. What kind of a method did you use in estimating the number of thousands of feet of saw timber on that land? A. Instead of taking the elevation of the tree to get the height of it, you know, we used trees that were lying on the ground that fell down. We could measure them there. We had tape and all the necessary instruments to do the measuring with and we just simply measured the trees on the ground, we measured several of those, that is of different diameters of trees we measured and then we counted all the trees that were taken as being saw timber and then we concluded those trees— . . . We measured trees of various sizes and averaged them up by the thousand foot of trees. Those that would go 700 feet and those that would run as high as 3,000. Those we measured that go 700 and some of them as high as 3,000 and some 2,000 feet, and there were trees larger that we did not measure. Those larger ones we measured were laying down. In fact, all those we measured were laying on the ground. Q. As I understand you measured some of the trees that were lying on the ground. A. Yes sir. Q. And by that measurement you got an accurate number of feet of those logs that were lying down? A. Yes sir. Q. And then you compared, you estimated the trees that were standing with those which you had measured and which were lying down, for the purpose of determining the number of thousands of feet lying upon the land. A. Yes sir. And then we counted the trees in order to establish how many thousand feet there was. Q. Now, Mr.

Park, state to the jury please how·many thousand feet of saw timber there was upon your land according to that estimate."

An objection to this question was sustained on the ground that the witness was incompetent, the appellant taking the position that the quantity of timber on the land could only be proved by an expert who had made a formal cruise of the timber as that term is understood among lumbermen. Such is not the law. If it were, the landowner whose timber is destroyed before cruised by an expert is without redress. We think the witness was qualified to answer the question propounded, and that the objection interposed by the appellant went to the weight rather than to the competency of the evidence sought to be elicited. We refer to this ruling at this time in view of a retrial that must be ordered on other grounds.

The appellant further contends that the court should have directed a judgment for nominal damages only. We are not prepared to say that the respondent was not entitled to recover substantial damages under the testimony offered, and the difficulty of proving such damages as accrued within the period of the statute of limitations is no bar to a recovery.

Numerous errors are assigned on the ruling of the court in admitting expert testimony tending to show the cause of the destruction of the trees. Many of these rulings may not occur on a retrial and we will not consider them in detail. It seems to us that much technical knowledge was wasted on this subject. If a witness knows from observation and experience that tree and plant life are destroyed by the fumes and smoke from a smelter he may testify to that fact, even though he may not be able to explain the chemical processes by which the destruction is wrought. On the same principal a witness may testify that a car is propelled by electricity though he may not understand the mechanism of the car or know how the electricity is generated or the mysterious power applied. We think this statement will be a sufficient guide for the court on a retrial of the cause which is now awarded.

The judgment of the court below is reversed, with directions to grant a new trial; and in view of the fact that the course pursued by the respondent was forced upon him by the erroneous rulings of the trial court, the costs in this court will abide the result of the new trial.