[No. 24524.    Department One.    January 26, 1934.]

CLARA E. MESSENGER, *Respondent*, v. CHARLES H. FRYE, *Appellant*, LETTUCE & CELERY FARMS COMPANY *et al., Defendants.*[1]

[1]Reported in 28 P. (2d) 1023.

*Eggerman & Rosling,* for appellant.
*Geo. B. Cole* and *John Wesley Dolby,* for respondent.

MAIN, J.—This action was brought to recover damages for trespass upon land owned by the plaintiff.

The defendants were three corporations and Charles H. Frye, individually. Before the case was submitted to the jury, all the corporations were dismissed out of the action, and only the individual defendant remained. The jury returned a verdict in favor of the plaintiff in the sum of seven thousand dollars. The defendants moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial; both of which motions were overruled. Judgment was entered upon the verdict, and the defendant Charles H. Frye appeals.

The facts essential to be stated are these: The respondent owns a farm in Snohomish county consisting of approximately one hundred acres, less than half of which has been brought under cultivation. In the same vicinity, the Frye-Bruhn Company, a corporation, owned approximately sixteen hundred acres of land upon which lettuce was produced in large quantities, together with other farm products. During the year 1931, the farm was operated by the Frye Lettuce Farm, Inc., a corporation. The appellant was the managing officer or agent of both of these corporations.

Before lettuce could be produced, it was necessary to clear and level the land, and owing to the character of the soil, it was necessary to have water for irrigation purposes. A portion of the lettuce farm adjoined the respondent's farm on the east, and another portion on the south or southwest. Three or four hundred feet to the east of where the two farms joined on the east, a creek flowed. About sixty-eight feet west of the dividing line between the two tracts, there is what is referred to as the "Big Rock." Around this, there was a cluster of springs, and the land was wet and soggy. To the west of the big rock several hundred feet, there was another spring. This latter spring was the source of supply for respondent of water for domestic purposes. It was conveyed some distance to the south, where the dwelling house and other farm buildings were located.

The creek mentioned crosses the land of the respondent and passes on to the land of the Frye-Bruhn Company which is to the south and west of the respondent's land. In this creek, there was constructed by the Frye Lettuce Farm, the operator, a dam which raised the water so that there was a difference of about forty inches between the surface water below and above the dam. From this dam, a pipe was constructed to the ice plant. In the dam were placed two boxes for the purpose of carrying off excess water. The land in this vicinity other than that which had been cleared was covered with brush, stumps and logs. At or near the east line of the south portion of the respondent's farm and extending some distance north and south, was an irrigation ditch.

The superintendent of the lettuce farm was one Fred J. Repp. He was employed by the Frye Lettuce Farm, Inc., and had general charge of all the opera-

tions, including the hiring of employees, which at times were eight hundred or nine hundred men.

It was the desire of the Frye Lettuce Farm to develop the tract of land, which it operated, which was across the line east from the big rock. For this purpose, the appellant, as the managing agent of the corporation, directed Repp to go upon the eighty acres of land "to slash the level land of his eighty up there." In order to reach this portion of the land, it was necessary to slash a way from the highway which was to the south of the respondent's land. Repp was directed to slash a way through on the east line of the respondent's property, it being believed at the time that it was a highway which had not been cleared and opened. This highway was slashed for some distance, and then the slashing bore off to the right towards the eighty-acre tract. Repp was also directed to develop water upon the eighty-acre tract, which might be used in the operation of the farm.

In August of 1931, Repp caused, as the respondent's evidence showed, two ditches to be dug, extending from the big rock east to the creek, which would cause the water to flow from the springs in that direction. Also, he caused the men under his employ to set off a charge of dynamite in the vicinity of the big rock for the purpose, as he said, of blowing away the mud so that the water would come to the surface. The soil at this point was about two feet black dirt or muck, a stratum of clay, and then sand or gravel. Whether these two ditches mentioned were merely the clearing out of natural channels or the constructing of artificial ditches, the evidence is in dispute. In slashing the right of way mentioned, the respondent claims that the irrigation ditch which extended along the east boundary of her property was damaged.

In the complaint, there were four causes of action, separately stated, one of which was dismissed before the case went to the jury. In the others, damages were sought to be recovered for these items: (a) blasting at the big rock; (b) diverting of water east from the big rock; (c) slashing and cutting trees upon the respondent's property; (d) damages to her irrigation ditch; and (e) constructing a dam in the creek.

The first question is whether the appellant was liable individually. The general, if not the universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable to third parties for such tort, nor for the acts of other officers, agents or employees of the corporation in committing it, unless he specifically directed the particular act to be done, or participated or cooperated therein. *Ellingson v. World Amusement Service Assn. Inc.,* 175 Minn. 563, 222 N. W. 335; *Canfield v. The Chicago, R. I. & P. Ry. Co.,* 59 Mo. App. 354; *Folwell v. Miller,* 145 Fed. 495; Fletcher Cyclopedia Corporations, Vol. 3, p. 557.

Inquiry will now be directed as to whether the appellant is individually liable for the blast of dynamite at the big rock. It is claimed by the respondent that this blast so disturbed the strata of the earth as to destroy the spring from which she got water for domestic purposes. At the time the blast was set off, the line between the two properties was not known, and was not surveyed until about a month later. The appellant can only be liable, under the rule stated, for the result of the blast if he specifically directed the superintendent to set it off at or near the big rock for the purpose of developing water.

Appellant testified that he ordered "Mr. Repp to develop the water, and he inadvertently got on her side of the ground. . . ." Repp testified, as already indicated, that he went up there for two purposes, one to clear and level sufficient land which was adapted to the raising of lettuce, and to develop water. He did not testify that the appellant gave specific directions to develop water. Both the appellant and Repp were called as witnesses by the respondent. There is nothing in their testimony from which it can be concluded or reasonably inferred that the appellant specifically directed Repp, the superintendent, to go upon the respondent's land and develop water at the big rock. From this, it follows that the item of damages claimed by the disturbing of the strata of the ground and therefore destroying respondent's supply of domestic water should have been withdrawn from the jury.

The case of *Parker v. Cone,* 104 Vt. 421, 160 Atl. 246, is in all essential particulars like the one now before us, and it was there said:

"The Corporation was the principal in the lumbering operations and Cone and Gould were its agents. Cone, as president of the corporation, was the superior agent who gave the instructions to Gould, the subordinate agent, whose duty it was to carry out such instructions. The law is that under such circumstances the relation of principal and agent did not exist between them, and Cone is not personally liable for torts committed by Gould while carrying out his instructions unless he specifically directed them to be done or participated or cooperated therein. [Citing authorities.]"

The case of *Bath v. Caton,* 37 Mich. 199, is to the same effect.

The cases of *Lytle Logging & Mercantile Co. v. Humptulips Driving Co.,* 60 Wash. 559, 111 Pac. 774, and *Marsh v. Usk Hardware Co.,* 73 Wash. 543, 132

Pac. 241, are clearly distinguishable. In the first of these cases, it is distinctly pointed out that "the testimony clearly shows that the trespass was committed by direction of the respondent Stockwell, who is the president and general manager of his corespondent;" but there is no such showing in this case. In the second case, it was only held that the president and secretary of a powder company, who were trustees, were presumed to be actively engaged in managing the affairs of the corporation where it had no superintendent, and would be liable for the tort of the corporation in negligently issuing a circular. The facts of the case now before us do not bring it within the rule of that case.

Whether the evidence would have been sufficient to take the question of damages resulting from the explosion of dynamite to the jury as against the Frye Lettuce Farm Company had that corporation been a party to the action, is a question which is not before us at this time, and upon which we express no opinion.

The next question is whether the appellant is liable for the diversion of the water to the east from the big rock, if it was so diverted, and whether he was liable depends upon whether he ratified its diversion after the survey was made and the line dividing the properties was known. The testimony offered by the respondent was to the effect that there was a slight rise in the ground to the east of the rock, and that the ditches which have been mentioned were artificial. The testimony offered by the appellant was to the effect that the natural flow was to the east or southeast, and that nothing more was done than merely clearing out natural channels. If the fact was as the evidence offered by the respondent indicated, then the appellant, when he discovered the ditches after the survey was made, not having done anything to prevent

the diversion of the water, necessarily ratified what had been done as to its diversion. After the survey was made and he visited the big rock, he knew what had been done, and, failing to correct it, he cooperated therein. *New England Dredging Co. v. Rockport Granite Co.,* 149 Mass. 381, 21 N. E. 947.

■ As to the items of building the dam in the creek and doing the slashing, the appellant was liable for these, because the evidence shows that he specifically directed them. He was also liable for the injury to the irrigation ditch, because this was merely incidental to the slashing and clearing of the right of way.

■ We now come to the measure of damages. The respondent offered testimony, over the vigorous objection of the appellant, showing the reasonable value of her farm immediately before and immediately after the alleged trespasses. In other words, the evidence went to the effect that the measure of damages was the difference in the value before and after. The position of the appellant was that the various items of trespass did not all call for the same rule of damages. After the court had ruled against the appellant's contention and permitted the evidence of the respondent, the appellant sought to meet this evidence by like proof in obedience to the ruling of the court.

In support of his motion for directed verdict before the case was submitted to the jury, the appellant argued, as one of the grounds, that the correct measure of damages had not been applied, and the motion was overruled. The case was submitted to the jury upon instructions which defined the measure of damages as the difference between the value immediately before and immediately after.

Where a trespass has resulted in permanent or irreparable injury the proper measure of damages is

the difference between the value of the land before the trespass and immediately after. But where the injury is not permanent and the premises may be restored to their original condition, a different rule prevails. In the latter case, the measure of damages is the reasonable expense of restoring the land and the loss of income pending such restoration within a reasonable time. *Sloss-Sheffield S. & I. Co. v. Mitchell*, 181 Ala. 576, 61 South. 934; *Clark Lloyd Lbr. Co. v. Puget Sound & C. R. Co.*, 96 Wash. 313, 165 Pac. 94.

If the waters were diverted, as the respondent contends, to the east from the big rock by artificial ditches, it was her duty to minimize her damages by filling up the ditches upon her own land, which she had a perfect right to do, and thus prevent any extension of the injury. *Kansas Pacific Railway Co. v. Mihlman*, 17 Kan. 224; *Sweeney v. Montana Central Ry. Co.*, 25 Mont. 543, 65 Pac. 912; *Hay v. Long*, 78 Wash. 616, 139 Pac. 761.

In this case, the damages occasioned by the slashing and the building of the dam were permanent, and called for the application of the rule applicable thereto. On the other hand, the damages to the irrigation ditch and the diverting of the water to the east from the big rock were not permanent, and called for the other rule of damages.

About the permanency of the damages for slashing, there can be no question, but as to the damages caused by the construction of the dam upon the property of the Frye-Bruhn Company and thereby causing the water to back up and overflow the land of respondent through which the stream passed, if the question were an open one in this state, it would be one of considerable difficulty.

Outside of this jurisdiction, the adjudicated cases upon that question are by no means in harmony. This

court, however, appears to have settled the question in the case of *Whiteside v. Benton County,* 114 Wash. 463, 195 Pac. 519, where it was held that a county was liable for damages caused by flooding land where, in order to protect a road from surface waters, the county dug an artificial ditch conveying and depositing such waters on land that naturally would not receive them, and that the measure of damages for the overflowing was the difference between the value of the tract immediately before and immediately after the injury. In principle, there can be no difference between that case and the one now before us. There, the waters were collected and cast upon the plaintiff's land. Here, according to the evidence of the respondent, the waters were caused by the construction of the dam to back up and overflow her land. If, before another trial, the dam in Healey Creek should be removed or so adjusted that it would not cause the waters in the creek to back up and overflow the respondent's land, a question would be presented which is not before us at this time, and which we do not now decide.

The respondent, however, says that, if there was error in the rule of damages, it was one which was invited by the appellant because he offered testimony along the same line as that of the respondent, and in some of his requested instructions embodied the rule of damages of the value before and after. This court has in many cases held that, where a party invites error, he cannot thereafter complain; but in none of the cases cited upon that question has it been held that, where a party, in obedience to the ruling of the court, tries his case upon the theory adopted by the court and the court commits error, the party is guilty of invited error.

In this case, when the testimony, as already pointed out, was first offered, the appellant urged the objection,

and again on a motion for a directed verdict, and, after having been overruled, he did not, by attempting to embody a rule of law in his requested instructions in accordance with the ruling of the court, bring himself within the rule of invited error. The reason that invited error cannot be complained of is because it is voluntary. The appellant, by offering the testimony in accordance with the ruling of the court and attempting to draft a rule of law in accordance with the court's view, did not bring himself within the rule of the cases holding that invited error cannot be complained of. *Milligan v. Fritts,* 226 Mo. 189, 125 S. W. 1101.

From what has been said, it appears that the judgment under the law cannot be sustained, because there was embodied one item for which the appellant was not responsible, and the correct measure of damages was not applied to each of the trespasses. Before a new trial is had, the pleadings should be recast to embody the four items which remain in the case.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss out of the case the claimed damages resulting from the explosion of dynamite at the big rock and grant a new trial (a) upon the diversion of water from the big rock; (b) the building of the dam; (c) the slashing; and (d) the damage to the irrigation ditch.

BEALS, C. J., MITCHELL, MILLARD, and STEINERT, JJ., concur.