[No. 31896. Department One. March 13, 1952.]

JOHN HARKOFF, JR. et al., Respondents, v. WHATCOM COUNTY, Appellant.[1]

[1]Reported in 241 P. (2d) 932.

*Tom A. Durham* and *Jack Rowles,* for appellant.

*Wright & Wright,* for respondents.

GRADY, J.—This action was originally instituted by John Harkoff, Jr., against Whatcom county to recover a judgment for damages arising out of injury to his property as a result

of flooding by the overflow of water from a roadside ditch maintained by the county. The other respondents claiming to suffer like damage intervened. The court awarded damages and injunctive relief.

The properties of respondents are located in an area referred to as a watershed. This area commences north of the Canadian line, is several miles in width, and the drainage is southerly and southwesterly. Much of the natural drainage water reached Fishtrap creek, which runs in a southwesterly course and is located some distance south of the properties of respondents.

Some years ago, Whatcom county constructed a system of public highways with roadside ditches and necessary culverts. Three of the highways ran in a northerly and southerly direction, and four of them in an easterly and westerly direction. The two highways mostly concerned in the litigation intersect and are known as the Depot road and the Blaine-Sumas road, the former running northerly and southerly and the latter easterly and westerly. The Blaine-Sumas road and that part of the Depot road south thereof are state highways. The other highways are county roads. The properties of the respondents abut on the east side of the Depot road and lie south of the Blaine-Sumas road.

In 1945, appellant improved roads in the drainage area and enlarged some of the roadside ditches by making them deeper and wider, particularly those on each side of the Depot road. The effect of such improvement was to substantially increase the amount of drainage water to be carried by the ditches. A portion of the drainage ditch on the west side of the Depot road and north of the Blaine-Sumas road was back-filled, and the water carried by that ditch was diverted by a culvert to the ditch on the east side of the Depot road. Other changes in ditches and culverts made in about 1948 increased the drainage water flowing in the ditches on each side of the Depot road. In 1950, a drainage ditch was constructed by a property owner

having property north of the Blaine-Sumas road. Appellant allowed the water to be emptied into the ditches running along the Depot road, and deepened and widened the ditch on the west side thereof. The result of the augmented capacity of the ditches along the Depot road and the changes made in the location of the culverts was to increase the flow of drainage water along the east side of the Depot road and cause that ditch to overflow onto the lands of respondents and damage their lands, buildings, and crops.

The findings of fact made by the court go into much detail, but we consider the foregoing contains a sufficient portrayal of the situation to enable us to reach our conclusion as to the applicable rules of law.

The testimony took quite a wide range, and we find much conflict therein. The record contains several maps, photographs, and other documentary evidence. The trial judge viewed the premises.

■ Several assignments of error are directed to the findings of fact made by the court and we are requested to reject some of them. This would require a conclusion on our part that such findings were not supported by a preponderance of the evidence. This is a type of case where physical facts, as they would appear to one making an inspection of the roads, ditches, culverts, and drainage area, must be given much weight, and in many respects be controlling. The trial judge, having had the witnesses before him and the opportunity to weigh their testimony in the light of his inspection, was in a much better position to determine questions of testimonial knowledge and the weight to be given the testimony he heard, as well as the evidentiary value of exhibits, than we are by an examination of the record. We are satisfied that the findings of fact made by the court are supported by a preponderance of the evidence and are not inclined to disturb them.

■ The action has been brought and maintained by the respondents upon the theory that the appellant has damaged their properties in violation of Art. I, § 16, of the con-

stitution, which provides that no private property shall be taken or damaged for public or private use without just compensation being made. When the appellant constructed and subsequently made improvements to its road system, it necessarily changed the course of the natural drainage of surface water. It had the right to construct and at times enlarge roadside drainage ditches to protect the roads and to put needed culverts under them. In so doing, however, it was its duty to construct them of sufficient capacity to carry the drainage waters impounded thereby and in such a manner as not to overflow onto the property of others.

A breach of such a duty with resultant damage to property brings the property owner affected within the protection afforded by Art. I, § 16, of the constitution. *Wendel v. Spokane County,* 27 Wash. 121, 67 Pac. 576; *Whiteside v. Benton County,* 114 Wash. 463, 195 Pac. 519; *Ulery v. Kitsap County,* 188 Wash. 519, 63 P. (2d) 352. Other cases adhering to and applying the rules of law pronounced in the foregoing cases might be cited, but we consider those referred to are sufficient to support and illustrate the views we have expressed.

When respondents sought the protection afforded by the constitution, they were not required to present or file any claim against appellant as provided by Rem. Rev. Stat., § 4077 [P.P.C. § 480-17]. *Knapp Brick & Tile Co. v. Skagit County,* 4 Wn. (2d) 152, 102 P. (2d) 679; *Boitano v. Snohomish County,* 11 Wn. (2d) 664, 120 P. (2d) 490.

The appellant complains about the measure of damages used by the court. The court found that 2.3 acres of respondent Harkoff's land had been depreciated in value to the extent of $690, and the value of his certified strawberry plants destroyed was $3,365.22; that respondents Waldemar had suffered damages to their house and the cost of repairs would be $200; also the cost of rebuilding a dike would be $300; that the house and lot of respondent Donald Bonsen had been damaged, and the cost of repairing the house and replacing the filled dirt in the yard would be the sum of $2,200; that the barn on the property of respondent Chris

Bonsen had been damaged, and the cost of repairs would be the sum of $2,000.

■ The appellant contends that the measure of damages is the difference in value of the respective properties before and after the flooding. Art. I, § 16, of the constitution provides for just compensation being made. In determining what is the applicable rule for measuring damages in cases like the one before us, one of the first questions is whether the damage to the property is permanent, or whether the property may be restored to its original condition. If the injury is permanent, the general rule applicable is the difference between the market value of the property immediately before the damage and its market value immediately thereafter. If, however, the property may be restored to its original condition the measure of damages is the reasonable expense of such restoration, and in a proper case the loss of use or of income therefrom for a reasonable time pending such restoration. *Kincaid v. Seattle*, 74 Wash. 617, 134 Pac. 504; *Messenger v. Frye*, 176 Wash. 291, 28 P. (2d) 1023; *Armstrong v. Seattle*, 180 Wash. 39, 38 P. (2d) 377, 97 A. L. R. 826; *Ghione v. State*, 26 Wn. (2d) 635, 175 P. (2d) 955; 3 Sedgwick on Damages (9th ed.) 1916, § 932.

We have selected the cited cases because, when read and considered together, they state and apply rules when there is a permanent injury and when the damaged property can be restored to substantially its original condition. In the *Kincaid* case, the city, when grading a street, caused the slope of a fill to extend over onto an abutting lot. We stated that the act done was in the nature of a trespass, but not strictly so. The result of the act done was in effect to take the part of the lot covered by the dirt and to depreciate the market value of the lot. We considered that the removing of the earth and building a bulkhead was not the proper solution of the problem, and concluded that damages to the owner should be measured by the difference between the fair market value of the property before and after the taking and damaging. In the *Messenger* case, the damages

were caused by an overflow of water. The act done was regarded as a trespass and resulted in permanent injury. In that case, we said:

"Where a trespass has resulted in permanent or irreparable injury the proper measure of damages is the difference between the value of the land before the trespass and immediately after. But where the injury is not permanent and the premises may be restored to their original condition, a different rule prevails. In the latter case, the measure of damages is the reasonable expense of restoring the land and the loss of income pending such restoration within a reasonable time."

In the *Armstrong* case, we had a situation where a city, without exercising the right of eminent domain, removed a large quantity of gravel from property belonging to the plaintiff. We decided that the property had been damaged within the meaning of Art. I, § 16, of the constitution, and applied the difference in market value rule. It is quite apparent that the restoration theory could not apply.

The *Ghione* case is to the same effect. This case cites 3 Sedgwick on Damages, *supra*. The author states the rules to be:

"The general principle upon which compensation for injuries to real property is given, is that the plaintiff should be reimbursed to the extent of the injury to the property. The injury caused by the defendant may be of a permanent nature; in such a case the measure of damages is the diminution in the market value of the property. . . . If the injury is easily reparable, the cost of repairing may be recovered."

A study of the foregoing questions will indicate that sometimes it has been difficult to determine which rule to apply to a given situation. In some situations, the cost of repairing the injury may be greater than the diminution in its market value, in which event the courts are inclined to use the latter measure of damages. In some cases, it has been stated that the cost of repairs is not the measure of damages, but only evidence of the amount thereof. We have expressed such view in cases of injury and damage to automobiles.

■ ■ However, when we consider the nature and character of the damage done to the respective properties of respondents, we find that in those situations where the court used the restoration measure of damages, repairs and replacements could readily be made. In the case of respondent Harkoff, the court properly adopted the difference in value measure as to the 2.3 acres of land, because the flooding removed top soil therefrom and deposited sand thereon, thus depreciating its value. The field of strawberry plants was not operated for the raising of strawberries, but for the growth and sale of certified strawberry plants. The court treated the plants as an annual crop, and upon the evidence submitted was able to find the market value of the plants as such. We think that was the proper measure of damages rather than either cost of restoration or difference in market value of the land upon which they were grown.

The court enjoined appellant from allowing the escape of water from the ditch on the east side of the Depot road south of the Blaine-Sumas road in such a manner that such water would flow onto or across the premises of respondents, and directed appellant to prevent the same.

■ Although the appellant assigns as error the granting of injunctive relief, we do not understand that it seriously contends such relief would not be warranted if we otherwise approve the judgment of the trial court. On this theory, it is urged that the injunctive relief is too broad in that it includes flooding of respondents' lands by waters over which appellant has no control. In view of the broad general language used, we are unable to say that the concern of appellant does not have some justification. The appellant would not be responsible for acts of God, or the happening of events not reasonably foreseeable. The decree should except such contingencies. In all other respects, the decree is affirmed.

The respondents will recover costs and disbursements.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.