[No. 3128–3. Division Three. September 6, 1979.]

PENNEY FARMS, INC., *Appellant*, v. LYLE W. HEFFRON, ET AL, *Respondents*.

*Walter E. Weeks, Jr.,* and *Weeks, Dietzen & Skala,* for appellant.

*Roger K. Garrison,* for respondents.

McINTURFF, J.—Plaintiff, Penney Farms, Inc., appeals the damage award of a favorable judgment.

The sole issue is whether the trial court applied the appropriate measure of damages for injury to and destruction of commercial orchard trees when it awarded plaintiff $225.[1] We find that it did not.

■■ The purpose underlying tort damages is succinctly set forth in C. McCormick, *Law of Damages* § 137 (1935):

The primary aim in measuring damages is compensation[.] . . . [T]his contemplates that the damages for a tort should place the injured person as nearly as possible

---

[1]Although the trial court felt constrained to use a measure of damages based upon the difference in the value of the orchard as realty before and after the injury and destruction, it did enter findings of fact which establish a basis for an award of damages which reflects lost productivity.

The rationale underlying the trial court's award may be summarized as follows:

1. The measure of damages is generally limited to the value of the orchard land before the destruction of some of the trees less the value of the land after the destruction;

2. If the diminution in land value is negligible, then the value of the trees destroyed should be determined;

3. To determine the value, the trial court first ascertained the fair market value of an acre of orchard and then divided that amount by the number of trees per acre, thereby arriving at the value per tree of $45 each;

4. Since one tree was destroyed after the defendants were aware of plaintiff's claim of ownership, the value of that tree should be tripled (RCW 64.12.030); however, the other two trees were not, at least arguably, intentionally damaged, so the award for them should only be $45 apiece.

It should also be noted that the award does not compensate plaintiff for the injury to three other trees which were partially destroyed by the defendants.

in the condition he would have occupied if the wrong had not occurred[.]

Toward this goal of compensation, *Marrion v. Anderson*, 36 Wn.2d 353, 355, 218 P.2d 320 (1950) (a case involving the destruction of a small orchard) held:

> [W]here a part of the real property is destroyed, the loss may be estimated upon the diminution in the value of the premises, if any results, or upon the value of the part severed or destroyed; and that the measure of damages should be adopted which would prove most beneficial to the injured party.

*See also Brereton v. Dixon*, 20 Utah 2d 64, 433 P.2d 3 (1967).

■ Although the trial court correctly deemed the appropriate measure to be the value of the trees damaged or destroyed because there was no diminution in land value, it failed to recognize that in the case of commercial cherry trees, the value of a damaged tree is inextricably tied to its productivity. *Watkins v. FMC Corp.—Niagara Chem. Div.*, 12 Wn. App. 701, 706, 531 P.2d 505 (1975); *Brereton v. Dixon, supra; St. Louis Southwestern Ry. v. Follis*, 268 S.W. 1030 (Tex. Civ. App. 1925). *Accord, Hill v. Morrison*, 263 P. 573, 575 (Cal. Dist. Ct. App. 1928); *Morris v. Hazel*, 24 Del. 324, 77 A. 766, 767 (1910). Thus, loss of productivity, *i.e.*, the dollar value of the fruit production of the trees destroyed during the time the plaintiff lost the production, less the dollar value of the foreseeable costs of production (*cf. Desimone v. Mutual Materials Co.*, 20 Wn.2d 434, 438, 147 P.2d 945 (1944); *Shotwell v. Dodge*, 8 Wash. 337, 343, 36 P. 254 (1894)), is the appropriate method to determine the extent of loss, and not the land value divided by the number of trees thereon, which ultimately is an attempt to couch the value of the trees in before and after land value terms.

In the instant case, the trial court, being somewhat unsure of the proper measure of damages, entered unchallenged findings that a cherry tree will produce 680 pounds of cherries per year, the retail value of which was 25.1 cents

per pound, and the cost of harvesting the cherries was 8 cents per pound. Additionally, the court found that the time of lost productivity was 10 years, *i.e.,* 5 years of total lost production and 10 years of partial lost production while replacement trees were maturing.[2] As a result, the court found the total loss of production from the three trees totally destroyed, the tree one–third destroyed, and the two trees one–quarter destroyed was $4,456.20 over 10 years.

A 10–year loss of productivity is inappropriate in this case. During the course of litigation, the plaintiff sold its orchard. Therefore, the production lost by the plaintiffs does not range over 10 years, rather only from the time of destruction to the time of sale of the orchard. Thus, the matter should be remanded for the appropriate calculation of lost production damages.[3]

The cases relied upon by the respondents[4] for use of a measure of damages based upon the difference in the land value of the orchard before and after the destruction of the fruit trees are not controlling for two reasons: (1) they do not involve mature, fruit–bearing commercial orchard trees, and (2) *Marrion v. Anderson, supra,* permits the adoption

---

[2]Finding of fact No. 20 read:

"That the Plaintiff testified that the reasonable average production for mature cherry trees in that area is 680 pounds per tree; that a reasonable average price per pound for cherries produced on the orchard in question is 25.1 cents; that harvesting costs averaged .08 cents per pound; that it takes 15 years for cherry trees to come into reasonable bearing, with no production during the first five years and an increasing partial production during the next ten years to maturity, and that it is reasonable to compute the lost production from the destroyed and damaged trees as a total period of ten years."

[3]This holding should not be construed as necessarily applying to an extended period of lost productivity wherein contingencies of frost, blight, variations in the market, and availability of labor may be too speculative to support a damage award.

[4]*Falcone v. Perry,* 68 Wn.2d 909, 416 P.2d 690 (1966); *Ghione v. State,* 26 Wn.2d 635, 175 P.2d 955 (1946); *Dierssen, Inc. v. May Valley Logging Co.,* 138 Wash. 263, 244 P. 564 (1926); *Park v. Northport Smelting & Refining Co.,* 47 Wash. 597, 92 P. 442 (1907); *James S. Black & Co. v. F.W. Woolworth Co.,* 14 Wn. App. 602, 544 P.2d 112 (1975).

of a measure of damages based either on the land value diminution or the value of the item injured or destroyed, whichever proves most beneficial to the injured party.[5]

Finally, in determining whether to apply the lost production measure, it is immaterial whether the fruit trees at the time of destruction or injury were laden with an existing crop, since the lost production measure of damages is applicable to the loss of a prospective crop. *See Fuhrman v. Interior Warehouse Co.*, 64 Wash. 159, 163, 116 P. 666 (1911).

Judgment of the Superior Court is affirmed, but the case is remanded to the trial court for the recomputation of damages.

MUNSON, J., concurs.

ROE, J. (dissenting)—In this case we are concerned with the measure of damages to cherry trees in the orchard, three of which were destroyed and three of which were damaged. The law appears to be that where any trees, timber, or shrubs on the land of another or in a city lot are destroyed or injured, the plaintiff may proceed under RCW 64.12.030, and treble damages shall be given for the value of the trees for willful trespass. Or if the damage is permanent, the diminution market value may be used. *Harkoff v. Whatcom County*, 40 Wn.2d 147, 241 P.2d 932 (1952). Since there was no reduction in market value, the measure of damages by the trial court is correct as to the destroyed trees. As to the trees which were merely injured, it would seem that the damage was temporary, so the measure of damages would be the temporary loss of production so as to make the plaintiff whole. *Watkins v. FMC Corp.—Niagara Chem. Div.*, 12 Wn. App. 701, 531 P.2d 505 (1975).

---

[5]Additionally, the use of the before and after land value measure of damages in *Lawson v. Helmich*, 20 Wn.2d 167, 146 P.2d 537, 151 A.L.R. 930 (1944), was not challenged by the injured party and may have represented the appropriate compensation for the injury suffered in that case, but definitely not in this case.

This is a net loss that can be recovered, that is, the market value of the crop, less the cost of harvesting and marketing, *Shotwell v. Dodge,* 8 Wash. 337, 36 P. 254 (1894).

Reconsideration denied October 12, 1979.